37973. PACE v. SMITH et al.

GREGORY, Justice.

Plaintiff Cecil Pace filed suit in Fulton County Superior Court against the State Board of Bar Examiners (Board) and the Director of Bar Admissions, alleging that certain procedures used in

administering and grading the State Bar Examination are facially unconstitutional; that the "unfettered discretion" given the Board to determine an applicant's score on the examination violates due process of law; and that requiring the plaintiff to take the bar examination prior to being admitted to practice in this state deprives him of a "property right" and, thus, violates due process. The plaintiff prayed that the trial court declare the grading system of the bar examination unconstitutional and certify him for admission to the Georgia Bar. The trial court granted the State's motion to dismiss, finding that the plaintiff's complaint failed to state a claim on which relief could be granted; that the complaint failed to state a claim for declaratory relief and that the court lacked subject matter jurisdiction. This appeal followed.[1]

The controlling issue in this case is whether the trial court erred in granting the State's motion to dismiss for failure to state a claim. Code Ann. § 81A-112 (b)(6). " 'A motion to dismiss a complaint should not be granted for failure to state a claim unless the complaint shows with certainty that the plaintiff would not be entitled to relief under any state of facts that could be proved in support of the claim.' " *West v. Sprayberry,* 247 Ga. 306, 307 (275 SE2d 654) (1981).

(1) All applicants for admission to the Georgia Bar are required, by Rules of this court, to take a two-day examination. "One day is devoted to the Multi-State Bar Examination and the other to essay type questions. The essay questions are generally hypothetical factual situations . . . The identity of the examinee is concealed until the papers have been graded and the results determined. A grade of 70% is required for passing the exam." Code Ann. Ch. 9-1, Appendix, p. 35.

Following the February, 1980 Bar Examination, the Board of Bar Examiners notified plaintiff that his "average grade on all parts" of the examination was 66% and his score on the Multi-state portion of the exam was 128. Subsequently the Board informed plaintiff "between 120 and 121 was equivalent to 70% on the Multi-state portion of the February, 1980 bar examination."

---

[1] Even though the parties did not make the contention that the members of this court are disqualified from reviewing the decision of the trial court, we are not unmindful that we are here analyzing rules made by this court and implemented by the Board of Bar Examiners, the members of which are appointed by this court. However, we do not find that this alone disqualifies this court from reviewing plaintiff's case. Rather, we conclude that this situation is analogous to a situation where the trial court appoints a Special Master and gives instructions governing his duties.

Plaintiff argues that requiring him to repeat both parts of the examination when he "passed" one portion of the exam violates equal protection of the laws.

The Equal Protection Clause of the Fourteenth Amendment prohibits a state from creating a classification which serves no rational purpose or which arbitrarily divides similarly situated citizens into different classes and treats them differently. "A State cannot exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment . . . A State can require high standards of qualification, such as good moral character or proficiency in its law, before it admits an applicant to the bar, but any qualification must have a rational connection with the applicant's fitness or capacity to practice law." Schware v. Board of Bar Examiners, 353 U. S. 232, 238-9 (77 SC 752, 1 LE2d 796) (1957).

Plaintiff acknowledges that a state has a fundamental interest in requiring those persons aspiring to practice law to demonstrate, through a testing procedure, that they meet a minimum level of legal competence. Thus, plaintiff concedes that classifying applicants as either passing or failing the examination is rational and furthers a legitimate state goal. However, plaintiff maintains that the Board's failure to credit him for the portion of the examination he successfully completed classifies him in a manner which violates the equal protection clause.

In order to pass the Georgia Bar Examination an applicant must score a minimum of 70% on the *combined parts* of the examination. The Rules for Admission to the Bar, Code Ann. Ch. 9-1, Appendix, do not provide for crediting an applicant with a successful score on a single section of the exam so that he is not required to repeat that section if he again attempts the exam. Rather, the Rules provide that "no applicant shall be entitled to admission to the Bar unless he shall obtain, in the judgment of the Board, an *average* grade of seventy (70) percent on questions propounded." (Emphasis supplied.) "State Board of Bar Examiners," § 12, Code Ann. Ch. 9-1, Appendix, p. 46. Once the Board grades the examination papers and tallies the results in accordance with the Rules for Admission to the Bar, Code Ann. Ch. 9-1, supra, only two classifications emerge: (1) Those applicants who pass the examination by scoring, at a minimum, an "*average* grade of seventy percent on questions propounded," and (2) those applicants who do not attain an average score of 70%. An applicant in the latter category may, in the Board's judgment, "pass" one section of the examination; however, if his "average grade" on the combined sections of the examination is less than 70%, he is not entitled to

admission to the Bar. *All* applicants who achieve an average score of less than 70% on the combined sections of the examination are required to retake and successfully complete the entire examination in order to be admitted to the bar, regardless of whether the score attained on an individual section is 70% or greater. Thus, *all* applicants who fail to achieve an average score of 70% on the two sections of the exam are treated equally. We find that plaintiff's equal protection argument fails to state a constitutional claim.

(2) Plaintiff contends that this court lacks the authority to delegate to the Board of Bar Examiners the responsibility of grading bar examination papers in absence of specific guidelines. Plaintiff also urges that Section 7 of Chapter 9-1, Appendix, p. 43 "gives arbitrary, capricious and discriminatory power and authority to the Bar Examiners in determining whether an examinee attains an average grade of 70 on the exam," and, thus, violates due process.

The Rules for Admission to the Bar provide that "[t]he members of the Board shall be learned and experienced attorneys at law . . . of generally recognized ability and integrity." "State Board of Bar Examiners," § 1, Ch. 9-1, Appendix, p. 40. The Rules also provide:

"The Board of Bar Examiners shall before each examination, prepare a list of questions covering such topics and subjects as are within the scope of existing law relating to bar examinations. The Office of Bar Admissions shall cause a sufficient number of copies thereof to be printed in time for use for such examination and shall exercise the greatest care to insure the integrity of such examination, provided, however, that after the examination shall have been held, said questions may be made public by the Board of Bar Examiners in such manner and to such extent as it deems proper.

"The applicant must be examined touching his knowledge of such subjects pertaining to the practice of law as may seem advisable to the Board of Bar Examiners; also, touching his knowledge of:

"(1) the principles of the common law and statutes of England, of force in this State;

"(2) the law of pleading and evidence;

"(3) the principles of equity;

"(4) the Code of Professional Responsibility;

"(5) the Constitutions of the United States and of this State, and the rules of practice in the superior courts of this State; provided that no question on any bar examination shall be framed so as to require the applicant to include as part of his answer the title or the name of the author of any book, or the style or citation of any decision.

"The Board of Bar Examiners may in its discretion use as a part of any examination the multi-state bar examination prepared and graded under the direction of the National Conference of Bar Examiners. If such examination is used as a part of any bar examination, the Board of Bar Examiners may, in determining if applicants have made a grade of 70 percent, give such credit as it deems appropriate to those sections of the examination prepared and graded under the direction of the National Conference of Bar Examiners.

"Provided further, that if the multi-state Bar examination is used no applicant shall be passed who does not score at least 100 out of a possible 200 on that part of the examination." "State Board of Bar Examiners," § 7, Ch. 9-1, Appendix, p. 43. As noted above, examination papers of all applicants are graded anonymously by the Board. See § 9, *Id.,* at p. 44.

It is clear that this court has "not only the statutory authority, but also the inherent duty, to prescribe the procedures relating to the practice of law." Code Ann. Ch. 9-1, Appendix, p. 33, See also *Wallace v. Wallace,* 225 Ga. 102 (166 SE2d 718) (1969).

Implicit in this authority is the power to delegate to the Board of Bar Examiners the task of implementing a reasonable means of testing the competence of those who aspire to the practice of law. Further, we note that the Rules for Admission to the Bar set forth guidelines for the administration of the Bar examination. See, e.g., Code Ann. Ch. 9-1, § 7, p. 43, supra. It is also apparent that plaintiff's contention that the discretion vested in the Board to determine a passing grade is "arbitrary and capricious" is simply an allegation that the designated grading procedure allows for the *possibility* of some impropriety on part of the Board. However, "[t]he 'naked assertion' that a regulatory system could be improperly applied does not state a claim upon which relief may be granted." Davidson v. State of Ga., 622 F2d 895, 897 (5th Cir. 1980).

(3) Plaintiff next complains that requiring an applicant to take the bar examination before being permitted to practice law deprives him of a "property right" and thus violates due process. Stated differently, plaintiff's argument is that he has a right to practice law without meeting the requirements for admission to the bar set by this court.

"Property interests . . . are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law — rules or understandings that secure certain benefits and that support claims of entitlement to those benefits . . . To have a property interest in a benefit, a person clearly must have more than

an abstract need or desire for it. He must have more than an unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Board of Regents v. Roth, 408 U. S. 564, 577 (92 SC 2701, 33 LE2d 548) (1972). As noted above, it is clear that "[a] state can require high standards of qualification . . . before it admits an applicant to the bar," Schware v. Board of Bar Examiners, 353 U. S. 232, 239, supra, and there is no entitlement to admission without meeting these standards of qualification. "It seems clear that there is no constitutional guarantee of the right to practice law without examination." Attwell v. Nichols, 608 F2d 228, 230 (5th Cir. 1979). Plaintiff's argument fails to state a claim on which relief can be granted.

(4) Since we conclude that the trial court correctly dismissed plaintiff's complaint for failure to state a claim, Code Ann. § 81A-112 (b)(6), we find it unnecessary to reach plaintiff's other enumerations of error.

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 6, 1982.

Cecil Pace, *pro se.*
Michael J. Bowers, Attorney General, Kathryn Allen, Assistant Attorney General, for appellees.