481 S.E.2d 511 (1997)
267 Ga. 534
In re Application for Certification for C.R.W. (Bar Admissions Docket No. 157.)
No. S97A0802.
Supreme Court of Georgia.
February 24, 1997.
Appellant pro se.
Michael J. Bowers, Atty. Gen., Rebecca S. Mick, Christopher A. McGraw, Asst. Attys. Gen., Atlanta.
PER CURIAM.
C.R.W. is appealing the decision of the Board to Determine Fitness of Bar Applicants to deny her application for certification of fitness to practice law in Georgia. The Board issued a tentative denial after a personal meeting with C.R.W. in June 1995. The Board issued its final decision after a formal hearing before a hearing officer. The hearing officer recommended that C.R.W. be certified. The Board rejected this recommendation based on its finding that C.R.W. was not fiscally responsible. After a review of the record, we conclude that the evidence supports the Board's decision and affirm.
1. Admission to the State Bar of Georgia is governed by Rules promulgated *512 by this court.[1] Throughout the application process, the applicant bears the burden of establishing her fitness to practice law.[2] If the Board notifies an applicant of its intent to deny certification, the applicant may request a formal hearing.[3] The hearing officer's findings of fact and recommendations are not binding upon the Board or this court.[4] If there is any evidence to support the Board's decision, we will uphold it.
2. The Board's final determination denying certification refers to her "fiscal irresponsibility" and "the facts of this case." The dissent's view that C.R.W. did not have adequate notice of the Board's concerns is belied by the record. The Board's correspondence with C.R.W. since her initial application, as well as the transcript of its personal conference with her, demonstrate that C.R.W. had adequate notice and opportunity to meet the Board's concerns regarding her fiscal responsibility and candor.
3. This court has previously emphasized the importance of demonstrating stability in meeting financial obligations.[5] A review of this record shows that C.R.W. has not met her burden of showing a good faith effort to meet her obligations and has not established a sufficient payment history in view of her past financial difficulties.
C.R.W. graduated from George Washington School of Law in 1992. When she filed her application with the Georgia Bar in February 1994 and disclosed significant defaulted student loans, the Board informed her of its policy to not grant certification until she demonstrated that she had contacted creditors, made arrangements to repay existing debts, and had met the repayment terms for six consecutive months. Despite knowledge of this policy and C.R.W.'s own statement in her original application that she was not attempting to defeat creditors, C.R.W. made no attempt to work out payment with her creditors. Indeed, C.R.W. had made no payments on any of her law school loans. Instead, she filed her second petition for bankruptcy in May 1994 seeking to discharge her debts. C.R.W.'s lack of any good faith effort to repay debts was a factor cited by the bankruptcy court in denying discharge of two student loans. Only after the bankruptcy court entered this order did C.R.W. reach settlement agreements with other student loan creditors in March 1995. Her other student loan debts were discharged because of the creditors' failure to respond in the bankruptcy proceeding. Additionally, she was able to discharge approximately $17,000 in consumer debt.
The hearing officer found that as of April 1996 she was current on the obligations that survived bankruptcy or was not in default. The record, however, does not support this finding. Specifically, the letters from two student loan creditors stating that C.R.W. was not in default were dated March 1995, the same month she reached settlement agreements with them in bankruptcy and over a year prior to the evidentiary hearing. C.R.W. testified that these creditors allowed her to begin payments in April 1996. A credit report from one of these creditors, however, showed that payments were to begin in January 1996. Even if C.R.W. were not in default at the time of the hearing in April 1996, there was no evidence to show a satisfactory payment history on these two student loans totaling over $35,000. C.R.W. was obligated to begin paying a third student loan in October 1995. At the hearing in April, she produced four checks showing payments from October 1995 through January 1996. It was C.R.W.'s burden to establish her fiscal responsibility and she failed to do so.
Finally, the record shows other instances of a lack of candor or a lack of commitment to full disclosure. C.R.W. failed to disclose the existence of two loans and she failed to provide account numbers for four creditors *513 and addresses for her three most recent employers.
Because the Board's and this court's primary concern in admitting persons to the practice of law is the protection of the public, any doubts must be resolved against the applicant and in favor of protecting the public.[6] In light of this concern and all the circumstances detailed above, we cannot say the Board's decision lacks foundation in fact and we affirm.
Decision affirmed.
All the Justices concur, except BENHAM, C.J., and CARLEY, J., who dissent.
BENHAM, Chief Justice, dissenting.
I respectfully dissent from the majority's affirmance of the decision of the Board to Determine Fitness of Bar Applicants which denied a certificate of fitness to practice law to C.R.W. C.R.W., a graduate of the George Washington University School of Law and a member in good standing of the Bar of the District of Columbia, filed an application with the Board of Bar Fitness for a certificate of fitness to practice law. After a hearing attended by C.R.W., the Board tentatively determined not to certify her as fit to practice law in Georgia and notified her of her right to a formal hearing "with respect to the reasons for the Board's tentative denial." See Supreme Court of Georgia Rules Governing Admission to the Practice of Law, Part A, Section 8(a) ("Rules"). Incorporated within its tentative denial were five "specifications of the reasons for the Board's tentative order...." Id.[7] C.R.W. invoked her right to a formal hearing, and This Court appointed Timothy Sweeney, a member of the State Bar of Georgia, as the hearing officer. Mr. Sweeney conducted a hearing at which C.R.W. and counsel for the Fitness Board appeared. Pursuant to the requirement that he make written findings of fact and recommendations to the Board (Rules, Part A, Section 8(c)), Mr. Sweeney addressed each specification, found them to be either irrelevant or untrue, and recommended that they be overruled and set aside.[8] After receiving the hearing officer's findings of fact *514 and recommendations, the Board informed C.R.W. that it had rejected the hearing officer's recommendation that she be certified as fit to practice law. By means of a letter from the Director of the Office of Bar Admissions of the State Bar, the Board informed C.R.W. that "an applicant's lack of fiscal responsibility alone is sufficient cause to deny certification" and that she had not carried the "burden of proving that [she had] the requisite character and fitness to be certified for admission to the Bar of Georgia." Pursuant to Part A, Section 9 of the Rules, C.R.W. appealed the adverse decision of the Board to This Court, and today a divided Court affirms the Board's decision without giving C.R.W., the other members of the Bar of Georgia, aspirants to that membership, or the public any clear guide as to how these matters will be handled in the future.
1. The initial legal issue I perceive to be presented by C.R.W.'s appeal is whether the Board was procedurally authorized to base its denial of certification on the ground stated, i.e., the applicant's lack of fiscal responsibility, when that reason did not appear in the specifications presented to C.R.W. as the reasons for the tentative denial of her application. Section 8 of Part A of the Rules requires the Board "to prepare specifications of the reasons for the Board's tentative order [of denial of certification]" and send them by certified mail to the applicant. The applicant is required to file an answer to the specifications, with any specification not denied being deemed admitted. The Rules authorize the hearing officer to hear "all evidence deemed relevant to the specifications and the answers... in an effort to discover the truth...."
In the document entitled "Specifications" which C.R.W. received from the Board, the Board advised C.R.W. that the specifications listed therein were the reasons the Board *515 had tentatively decided to deny her application, and that "they will form the basis of the Board's findings of fact and conclusions of law" unless she satisfactorily refuted them. It is clear to me that the Board reads the Rules as I dothe Board is required to state its rationale for denying certification and the applicant is given the opportunity to rebut the allegations set forth in the specifications. If, as the majority implicitly holds, the Board is not limited in taking adverse action to the reasons set forth in the specifications, why require that specifications be made? Why tell an applicant that unrefuted specifications will form the basis of the Board's denial when the Board is not so limited? Because of the Rules' repeated emphasis on the specifications and the Board's statement that those specifications not satisfactorily refuted will serve as the basis for its decision, I believe the Board, when it bases a denial of certification on a ground not raised in the specifications, and This Court when it affirms such a denial, acts in a procedurally defective manner.
2. I also take issue with the merits of the ground set forth by the Board as the reason for denial of certificationthe applicant's purported lack of fiscal responsibility. In essence, the Board determined that C.R.W.'s act of incurring debt for a legitimate purpose, her filing of a petition for bankruptcy and having four student loans discharged therein, her entry into agreements with her creditors concerning repayment schedules for the loans surviving the bankruptcy, and her being current on those repayment plans was tantamount to a "lack of fiscal responsibility" which reflected a lack of the character and integrity expected and required of a member of the State Bar of Georgia. I do not contest the fact that a lack of fiscal responsibility can be a factor in denying a certificate of fitness to practice law.[9] In In re Lumpkin, supra, 251 Ga. 64, 302 S.E.2d 679 (1983), and in In re Johnson, 259 Ga. 509(5), 384 S.E.2d 668 (1989), an applicant's fiscal irresponsibility was cited as one of several reasons why the denial of certification was being upheld. Applicant Johnson had disclosed the existence of only one student loan (he actually had two); he had denied defaulting on a student loan when he had, in fact, defaulted on both loans; he had not disclosed a judgment taken by the New York Department of Law following his default on one of the student loans; he had not abided by the repayment schedule he had worked out concerning the loan on which judgment had been taken; he had not satisfied the judgments taken against him by creditors; and he had not made any payments on the student loan that had not been reduced to a judgment. In addition to multiple citations to Johnson's lack of candor, this Court determined that Johnson's "failure to satisfy financial obligations freely entered into reflects a lack of fiscal responsibility ... and a lack of character and integrity." Id., at 510, 384 S.E.2d 668. The Court found fault with Johnson for failing to abide by the repayment schedule he had worked out and not for the act of negotiating a repayment plan; therefore, I must conclude that Johnson's fiscal irresponsibility was his failure to satisfy the judgments taken against him and his failure to make any payments on one student loan. In Lumpkin, supra, 251 Ga. at 64-65, 302 S.E.2d 679, the applicant had falsely sworn that there were no unpaid debts in connection with a residence he had built for another; the applicant had defaulted on an education loan and failed to repay the entity who did pay it, despite his agreement to pay; the applicant had made no payments on an outstanding indebtedness; and his application was false and misleading due to his failure to disclose requested facts. The hearing officer in that case opined that the failure to honor legal and financial obligations demonstrated a lack of character and fitness, "particularly in view of the applicant's making *516 no real effort to repay his financial obligations." Id., at 65, 302 S.E.2d 679.
In stark contrast is C.R.W.'s situation she incurred debt for a legitimate reason and when she found herself financially unable to pay her creditors, she sought relief by initiating bankruptcy proceedings and by agreeing with creditors on new repayment schedules for her remaining financial obligations. As the hearing officer succinctly stated:
There is no suggestion in the Rules of the State Bar of Georgia, the rules of any court, or any other relevant source that it is an expectation of members of the Bar, either as an expectation subject to disciplinary sanction or even a simple statement of the expectation as an aspirational goal, that a lawyer will not aggregate debt beyond the lawyer's ability to pay or that the lawyer has any obligation to pay the lawyer's debts, other than debts arising out of [the] handling of client funds; or that the lawyer may not take advantage of bankruptcy remedies to discharge those debts....
I predict that aspirants to membership in the State Bar of Georgia, some incurring student loan indebtedness greater than any of us a generation or more older can fathom, will be very concerned about the majority's decision that incurring that debt and being unable to live up to the payment plan originally agreed upon can now serve as the basis for denial of a certificate of fitness to enter into the practice of law in Georgia.
Because I disagree with the majority's and the Board's decisions that incurring debt for a legitimate purpose, using legitimate means to relieve oneself of the burden of that debt, and keeping current on repayment plans worked out with creditors whose claims survived the bankruptcy proceeding, constitutes fiscal irresponsibility that reflects a lack of the character and integrity required of a member of the Bar of Georgia, I must dissent to the majority's decision. I am authorized to state that Justice CARLEY joins this dissent.
NOTES
[1] See Rules Governing Admission to the Practice of Law, adopted by the Supreme Court of Georgia, Ga. Ct. & Bar Rules, p. 12-1, et seq.
[2] In re Beasley, 243 Ga. 134, 136, 252 S.E.2d 615 (1979).
[3] Id. at sec. 8(a).
[4] Id. at sec. 8(c).
[5] See In re Johnson, 259 Ga. 509, 384 S.E.2d 668 (1989).
[6] In re Cason, 249 Ga. 806, 294 S.E.2d 520 (1982).
[7] The Specifications were as follows:

"1. Upon graduation from George Washington University Law School in 1992, you became responsible for some $100,000 in student loans.
"2. You were not candid about these loans on your application submitted January 5, 1994, or upon request for further information concerning the numerous loans when asked by the Office of Bar Admissions.
"3. Although four of your eight student loans were discharged eventually through bankruptcy court, four loans remain to be paid. These loans Are:.... Because of your lack of candor, it is unknown and unverified as to the exact payment which is due and how much has been paid over the last six months in these above-referenced loans.
"4. At the meeting with the Board ... on June 6, 1995, you were not candid with the Board when asked if you knew Ms. Ruth Hoch at George Washington University, with whom you made arrangements to repay your loan from George Washington University.
"5. During bankruptcy proceedings, instead of notifying Ms. Hoch at George Washington University about the adversary proceeding regarding discharge of the GWU loan, you sent the notice only to the Legal Department [of GWU]. This resulted in GWU's untimely attempt to avoid default of this loan."
[8] Hearing Officer Sweeney addressed each specification as follows:

1. "This specification is simply a statement of background information and is not intended to serve by itself as a basis for disqualification. Obviously, an applicant's responsibility for loan debts incurred for otherwise legitimate purposes is a circumstance which, by itself, has absolutely no relevance to an applicant's integrity and character requisite to be a member of the Bar of Georgia."
2. "There is no evidence that the listing provided by Applicant in her original application and amendments was materially incorrect....There is no evidence that the Applicant had any more complete information than was provided....The Office of Bar Admissions was unable by its direct inquiries to obtain any information greater than was provided by Applicant....The evidence does not reflect a lack of candor....There is not the slightest suggestion of any additional adverse information which Applicant was attempting to conceal. It strains credulity to suggest that having disclosed all of this adverse information, Applicant did not candidly disclose information available to her. The assertion in Specification No. 2 is not true."
3. To the extent that No. 3 asserts that applicant succeeded in obtaining a discharge in bankruptcy of four of her eight student loans after she filed her application for a certificate of fitness, the hearing officer determined that the specification is "simply a statement of background information and is not intended to serve by itself as a basis for disqualification. An applicant's legitimate utilization of available remedies to contest, avoid, or discharge responsibility for loan debts incurred for otherwise legitimate purposes is a circumstance which, by itself, has absolutely no relevance to an applicant's integrity and character requisite to be a member of the Bar of Georgia." In his summary of the evidence, the hearing officer stated that the applicant had entered into repayment agreements with the creditors whose claims survived the applicant's bankruptcy proceeding, and that, as of the date of the hearing (April 1996), the creditors had confirmed that the applicant was current in her payments pursuant to the payment plans. As for the assertion in Specification No. 3 that the applicant displayed a lack of candor, the hearing officer determined that "[t]he information sought was known to the Office of Bar Admissions because Applicant disclosed that information. Instead, the difficulty in this case arises out of the Office's inability to verify the information provided by Applicant by direct contract with Applicant's student loan creditors. The Office of Bar Admissions' inability to verify the recited information is not attributable to any action on the part of the Applicant, including any lack of candor, but to the apparent unwillingness of Applicant's student loan creditors to respond in the detail desired by the Office....There is no suggestion that Applicant did not authorize those creditors to disclose the information sought or that Applicant somehow interfered with those inquiries or the creditors' responses. Specification No. 3 is not true."
4. The hearing officer found that applicant had responded negatively to the Board's question whether she "had been dealing with a lady named Ms. Hoch," and had later said that she had spoken with someone at GWU, but she was "not familiar with the name." The hearing officer pointed that the applicant had filed with the Office of Bar Admissions a copy of a letter signed by Ms. Hoch from GWU, and that interrogatories completed by Ms. Hoch were consistent with the applicant's summary description of her contacts with GWU regarding her student loan. The hearing officer concluded that Specification No. 4 was not true after finding that applicant was truthful in her response to the Board that she had had contact with someone at GWU but could not remember who it was and could not identify the individual as Ms. Hoch.
5. The hearing officer interpreted Specification No. 5 as charging that applicant gave notice of her bankruptcy case only to GWU's Legal Department instead of giving specific notice to Ms. Hoch. He pointed out that applicant gave notice of the bankruptcy discharge application in accordance with the bankruptcy judge's notice to her, and observed that service on Ms. Hoch would not have been effective under Rule 7004(b)(3) of the Federal Rules of Bankruptcy Procedure. "To suggest that the Applicant is at fault in her integrity and character requisite to be a member of the Bar because she followed the available and mandated procedural requirements applicable to her contest with [GWU] ... is simply too much ... By definition, discharge applications are `adversary' proceedings and for Applicant to treat [GWU] as an adversary is not reflective of any deficiency in her integrity and character requisite to be a member of the Bar. To the extent Specification No. 5 alleges that Applicant engaged in any action which reflects upon her integrity and character requisite to be a member of the Bar, the allegations are not true."
[9] I note also that many a Georgia lawyer has been disbarred or suspended from the practice of law for acting in a fiscally irresponsible manner. See, e.g., In the Matter of Pittman, 264 Ga. 284, 442 S.E.2d 761 (1994); In the Matter of McDonald, 264 Ga. 137, 443 S.E.2d 850 (1994); In the Matter of Genins, 264 Ga. 90, 442 S.E.2d 733 (1994); In the Matter of Findley, 263 Ga. 832, 441 S.E.2d 410 (1994); In the Matter of Royal, 262 Ga. 717, 425 S.E.2d 650 (1993). However, I am unaware of any attorney heretofore being disciplined for incurring debt, filing bankruptcy, and entering into repayment plans with creditors.