S98A0599. IN RE E. L. D.
(494 SE2d 317)

PER CURIAM.

E. L. D. appeals the Board to Determine Fitness of Bar Applicants' final decision denying his application for certification of fitness to practice law. After a meeting held with E. L. D. in October 1994, the Board tentatively denied his application, and E. L. D. requested a hearing on the matter. A hearing was held before an officer in June 1996, and the officer recommended to the Board that certification be denied. The Board accepted that recommendation, and issued its final decision on May 5, 1997. After a review of the record, we determine that the evidence clearly supports the Board's decision, and we affirm.

1. Admission to the State Bar of Georgia is governed by rules promulgated by this Court. *In re C. R. W.*, 267 Ga. 534 (481 SE2d 511) (1997). Throughout the application process, the applicant bears the burden of establishing his or her fitness to practice law. *In re Beasley*, 243 Ga. 134, 136 (252 SE2d 615) (1979). If the Board notifies an applicant of its intent to deny certification, the applicant may request a formal hearing. Id. The hearing officer's findings of fact and recommendations are not binding upon the Board or this Court. *C. R. W.*, supra. If there is any evidence to support the Board's decision, it will be upheld on appeal. Id.

2. In this matter, the Board's final decision adopted the factual findings made in the Hearing Officer's Report recommending that certification be denied. That recommendation was based primarily upon E. L. D.'s failure to demonstrate candor on his Bar application, before the Fitness Board, and at the hearing. The Report also made findings that, at the time his application was submitted, E. L. D. (1) had demonstrated instability with regard to student loan obligations (although those loans ultimately were paid in full by the time the Hearing Officer's report was issued); (2) was serving a probated sentence after entering a plea of nolo contendere to charges of driving under the influence of alcohol; and (3) while previously working as an Internal Revenue Service investigator, had been the subject of a criminal investigation for alleged tax fraud that was ultimately referred to the United States Attorney's Office for prosecution. Pretermitting the impact of these findings, taken alone or together, on E. L. D.'s application, we agree with the Board that E. L. D.'s lack of candor, both in his Bar application and before the Board, warranted the denial of certification.

(a) On his fitness application, E. L. D. reported that he was employed by the Internal Revenue Service as a Special Agent from October 1990 until September 1991, and that he left that position in order to "pursue [a] legal career." E. L. D. also stated on his fitness

application that he had never been requested, either formally or informally, to resign from or terminate employment. As explained below, E. L. D. showed a blatant lack of candor regarding his tenure with the IRS and the circumstances under which he left that agency.

The record shows that while employed by the IRS, E. L. D. was stopped by a North Carolina Highway Patrolman for speeding. At the time of the stop, E. L. D. was driving an IRS vehicle assigned to him for official use, and a jacket bearing the IRS insignia was visible through the car's window. A field sobriety test registered E. L. D.'s blood alcohol level at .10. E. L. D. identified himself to the patrolman as a federal agent by showing his IRS badge, and told the officer that he was conducting an undercover investigation of suspected drug trafficking at a nearby truck stop. E. L. D.'s passenger, however, told the patrolman that the pair was traveling to Charlotte. E. L. D. then asked the officer to let him proceed as a "professional courtesy," and the patrolman agreed, so long as E. L. D. assured him that his IRS supervisor would contact the officer the next business day in order to confirm E. L. D.'s story. When he did not hear from E. L. D.'s supervisor, the patrolman contacted the IRS and discovered that E. L. D. had not been on official business when he was stopped on the highway.

Since E. L. D. had not reported the traffic stop to his superiors, an internal IRS investigation commenced that revealed that E. L. D. had "conspired and colluded in a tax refund scheme by preparing and submitting fraudulent federal tax return forms . . . to the IRS, using true taxpayer names and [social security numbers], from approximately January 1991 to March 1991." The IRS investigation resulted in 14 allegations of misconduct being lodged against E. L. D., including mail fraud, obstruction of justice, conspiracy to defraud the government, filing false tax returns, misuse of public funds, and forgery. Investigators identified 14 fraudulent tax returns that had been filed with the IRS, seeking a total refund amount of more than $23,000. Roughly $6,500 in refund checks were issued by the IRS as a result of the scheme. IRS investigators identified E. L. D. as a participant in the scheme through fingerprints, handwriting comparisons, bank cameras and records, monitored telephone calls, and similar sources. During the investigation, E. L. D. was visited at his home on more than one occasion by IRS investigators and informed that he was the subject of a criminal investigation, and his friends and associates were questioned. E. L. D. also hired an attorney in connection with the investigation. The IRS referred the matter to the United States Attorney's Office in North Carolina, with a recommendation that E. L. D. be prosecuted. To date, that recommendation has not been followed.

When questioned about the IRS investigation during the October

1994 hearing before the Board, E. L. D. stated that he had never been investigated for tax fraud by the IRS, that his work with the IRS was "excellent," and that he experienced no problems while working there. Concerning the tax fraud investigation, E. L. D. told the Board that it had been focused on an informant that he worked with, but that he was unaware that the investigation had ever focused on him. He also told the Board that at the time he was stopped by the North Carolina highway patrolman, he was on official business investigating illegal drug sales. E. L. D. made these same assertions before the Hearing Officer.

All of these statements are directly contradicted by the irrefutable evidence of record, and we agree with the Board's conclusion that it is difficult, if not impossible, to believe that E. L. D. was unaware of the IRS investigation and its potential criminal consequences. Furthermore, E. L. D.'s statement on his fitness application that he left the IRS in order to "pursue a legal career" is very questionable in light of the two facts. First, he did not begin law school until more than a year after he left the IRS, and then only after being recruited by a law school one month before enrolling. Second, it was in the second month of the fourteen-month IRS investigation that E. L. D. resigned his IRS position, after investigators came to his home. Accordingly, as found by the Board, it appears that E. L. D. demonstrated a palpable lack of candor in his explanation for leaving the IRS, and, in all likelihood, misrepresented the circumstances surrounding his departure on his application, before the Board, and before the Hearing Officer. False, misleading, or evasive answers to Bar application questions are grounds for finding a lack of the character, fitness and integrity required to be a member of the Bar of this State. *In re Johnson*, 259 Ga. 509, 511 (384 SE2d 668) (1989); *Beasley*, 243 Ga. at 136. Pretermitting the question of whether E. L. D.'s unethical behavior while working for the IRS is grounds for denying certification, we find that his lack of candor with the Board regarding these incidents warrants the denial of his certification to practice law.

(b) According to the Rockdale County Sheriff's Office, in August 1993, E. L. D. was stopped for driving at an excessive speed on Interstate 20. The patrolman smelled alcohol on E. L. D., and observed him stumble and almost fall as he exited his car, and hold onto his car in order to maintain his balance. When asked to perform field sobriety tests, E. L. D. refused, stating that he did not need to perform the tests as he was a law student, worked for an attorney, and was friends with a deputy sheriff, whom he asked be called to the scene. He continued to refuse sobriety tests, but did consent to an alco-sensor test, which registered a blood alcohol level of .15. He signed an implied consent form, was arrested and subsequently

entered a plea of nolo contendere to DUI charges and attempting to elude an officer in pursuit.

In his application and before the Board, E. L. D. asserted that while he had been drinking at the time he was stopped, he was not given an opportunity to demonstrate that he was not impaired, despite having "begged" the patrolman to administer field sobriety tests. Instead, according to E. L. D., the deputy sheriff immediately grabbed him by the wrists, placed handcuffs on him and dragged him back to the patrol car for questioning. While defendants and police officers often disagree in their respective version of events, E. L. D.'s and the arresting officer's versions of this incident are diametrically opposed to one another. Accordingly, we agree with the Hearing Officer that there may be merit to the contention that E. L. D. was not candid with regard to this incident, either. See *Johnson*; *Beasley*, supra. That issue does not need to be decided, however, because even if we agreed with the contention, our conclusions merely would be cumulative of those set forth in Division 2 (a) above.

For the reasons discussed, the final decision denying E. L. D.'s certification of fitness to practice law is affirmed.

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 12, 1998.

*Levy & Adams, D. Merrill Adams,* for appellant.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Senior Assistant Attorney General, Rebecca S. Mick, Assistant Attorney General,* for appellee.