*Johnston, Wilkin & Williams, Wendell E. Johnston, Jr., William J. Williams*, for appellant.

*Burnside, Wall, Daniel, Ellison & Revell, James B. Wall, Lee H. Little*, for appellees.

S00A1352. IN THE MATTER OF ANN T. JOHNSTON.

(531 SE2d 351)

PER CURIAM.

The Board of Bar Examiners ruled that Ann T. Johnston was not eligible to take the Attorneys' Examination in Georgia because she had been the subject of professional discipline in the State of New York. The first issue on appeal is whether an attorney's voluntary resignation from a state bar while disciplinary proceedings are pending is a "discipline." Following the majority rule, we hold that a voluntary resignation in the face of a pending disciplinary proceeding in another state is a "lawyer discipline" under our state's bar admissions rules. Therefore, we affirm the decision of the Board of Bar Examiners that requires Johnston to take the general bar examination rather than the attorneys' examination.

A second issue in this case is whether the rules of the State Bar of Georgia require this Court to keep confidential the names of parties who file an appeal in bar admissions cases. Because public access to the decisions of this Court is essential to our role in establishing and interpreting the law, we conclude that the state bar rules do not prohibit us from identifying the parties by name in published opinions.

1. The Rules Governing Admission to the Practice of Law permit the Board of Bar Examiners to offer an attorneys' examination to eligible persons. The attorneys' examination does not include the Multistate Bar Examination, but is composed solely of the essay portion of the Georgia Bar Examination. To be eligible for the attorneys' examination, a person must have "never been the subject of private or public lawyer discipline of any nature in any United States jurisdiction."[1]

In 1988, a Texas jury convicted Johnston of the felony of involun-

---

[1] Rules Governing Admission to the Practice of Law pt. C, § 2 (f).

tary manslaughter in the first degree. Due to that conviction, Johnston was suspended from the practice of law and ordered disbarred in New York. The Court of Appeals of New York reversed, holding that she could not be subject to automatic disbarment because the Texas felony of involuntary manslaughter in the first degree would not constitute a felony in New York.[2] Instead, the court found that she had been convicted of a "serious crime," which subjects an attorney to temporary suspension and, after a hearing, to a final order of suspension, censure, or removal from office.[3]

When a hearing was finally scheduled in 1993, Johnston requested permission to resign from the State Bar of New York. Her affidavit states that she was aware of the pending disciplinary proceeding arising from her felony conviction in Texas and that she could not successfully defend herself against those charges. In accepting her resignation, the court order noted that she acknowledged that she was the subject of a pending disciplinary proceeding into allegations of misconduct, her resignation was freely and voluntarily rendered, she had not been subjected to coercion or duress, she was aware of the implications of submitting her resignation, and she could not successfully defend herself against the charges in the pending disciplinary proceeding. Under New York law, a resignation during the pendency of a disciplinary proceeding is an admission of the charges[4] and may be permitted as an alternative to disbarment.[5]

Having reviewed the entire record, we conclude that the Board of Bar Examiners properly ruled that Johnston has been the subject of lawyer discipline. She resigned from the practice of law in New York while facing a pending disciplinary proceeding for her conviction of involuntary manslaughter in Texas. Although that crime was not a felony in New York, it was a "serious crime" for which an attorney could be disciplined by censure, suspension, or disbarment. In requesting permission to resign, Johnston acknowledged that she was charged with misconduct and could not successfully defend herself against those charges. She had been suspended from the practice of law in New York for more than three years at the time she resigned. Based on these undisputed facts, we reject her contention

---

[2] See *In the Matter of Johnston*, 553 NE2d 566 (NY 1990).

[3] See id.

[4] See *In the Matter of Garnier*, 316 NYS2d 288 (Sup. Ct. 1970); see generally Lori Jean Henkel, *Propriety of Attorney's Resignation from Bar in Light of Pending or Potential Disciplinary Action*, 54 ALR4th 264 § 6 (1987) (listing New York cases).

[5] See *In the Matter of Bailey*, 657 NYS2d 39 (Sup. Ct. 1997) (attorney charged with improper billing practices allowed to resign under 22 NYCRR 603.11(a) in lieu of disbarment); *In the Matter of Mastropieri*, 459 NYS2d 849 (Sup. Ct. 1983) (acceptance of resignation and disbarment are warranted when attorney acknowledges inability to defend against charges including conviction of serious crimes).

that there was insufficient evidence for the board to conclude that she was the subject of disciplinary action in New York.

Because we hold that a voluntary resignation in the face of a pending disciplinary proceeding in another state is a "lawyer discipline," Johnston is not eligible to take the attorneys' examination under the bar admissions rules in this state. Further, we conclude that the requirement that attorneys who have been disciplined in other states must take both the Multistate Bar Examination and essay portion of the Georgia Bar Examination is neither unreasonable nor unfair, but is rationally related to the state's desire to ensure a competent bar.

2. When a bar admissions applicant files an appeal in this Court, the rules of admission provide that the clerk "shall docket the appeal in a separate docket, which shall not be a public record."[6] The question in this appeal is whether this Court's opinions and orders are part of the appeal that shall not be a public record.

When this Court resolves a bar admissions dispute by an order, the implications of this issue are of little consequence since orders typically are circulated only to the parties. Increasingly, however, this Court has chosen to write opinions and publish them to establish a precedent concerning the issues of public importance that are raised in bar admissions cases. The opinions of this Court, regardless of the docket on which they are filed, are a matter of public record.[7] Thus, when a bar admissions case is decided in a published opinion, there is a conflict between the rule of public access to the court and court records[8] and the rule requiring that bar admissions records shall not be public.

Because of this conflict, this Court has been inconsistent in applying the state bar rule governing records in bar admissions appeals. Although we have made published opinions part of the public record, we have dealt with the identity of the petitioner in two different ways. Sometimes we have kept the petitioner's name confidential, especially in more recent years,[9] but historically we have referred to the individual by name.[10] Our rationale has been that the

---

[6] See Rules Governing Admission to the Practice of Law pt. A, § 9 (b) (appeals from decisions of Board to Determine Fitness of Bar Applicants).

[7] See Appellate Ct. Performance Standards 3.2 (1995) (public access to decisions).

[8] See *Green v. Drinnon, Inc.*, 262 Ga. 264 (417 SE2d 11) (1992); *Atlanta Journal &c. v. Long*, 258 Ga. 410 (369 SE2d 755) (1988); see also Ga. Sup. Ct. Rules 75-91 (providing for the broadcasting, recording, and photographing of court proceedings). But see Ga. Sup. Ct. R. 66 (providing for sealed records in Parental Notification Act cases).

[9] See *In re D. K. M.*, 271 Ga. 473 (520 SE2d 216) (1999); *In re G. E. C.*, 269 Ga. 744 (506 SE2d 843) (1998); *In re K. S. L.*, 269 Ga. 51 (495 SE2d 276) (1998); *In re C. R. W.*, 267 Ga. 534 (481 SE2d 511) (1997).

[10] See *In re Byars*, 271 Ga. 119 (515 SE2d 834) (1999); *In re Bowman*, 269 Ga. 721 (507 SE2d 438) (1998); *In re Farall-Shurman*, 266 Ga. 209 (467 SE2d 492) (1996); *In re Oliver*,

public's right to know is paramount and overrides the individual's right to privacy, especially when a bar applicant invokes the jurisdiction of the state's judicial system to resolve his or her dispute.

To clarify our policy, we hold that any applicant who chooses to appeal an adverse ruling concerning bar admissions loses the right to keep his or her dispute private in this Court's opinions or orders. As the standards on appellate courts explain, "[m]aking appellate court decisions available to all is a logical extension of the courts' responsibilities to review, develop, clarify, and unify the law."[11] A crucial part of any decision is the name of the parties. Making the names public is especially important in bar admissions cases where the applicant's reputation and recommendations are a critical part of the process in determining his or her fitness to practice law. Thus, we decline Johnston's request that we keep her name confidential in the text of this opinion.

Having considered the issue of public access to decisions of this Court, we also question the wisdom of designating the entire record in bar admissions cases as private.[12] Since the applicants are using public resources to resolve their disputes and the cases often raise issues of interest to the public, we think that the bar rules should favor openness and public access to appeals. Because of our concern, we direct the State Bar of Georgia and the Board of Bar Admissions to reconsider and amend the board's rules to designate the documents, if any, that should be excluded from the public record when filed with the clerk's office.

*Denial of eligibility affirmed. All the Justices concur.*

DECIDED MAY 30, 2000.

*Ann T. Johnston,* pro se.
*Thurbert E. Baker, Attorney General, Kathryn L. Allen, Senior Assistant Attorney General*, for Board of Bar Examiners.

---

261 Ga. 850 (413 SE2d 435) (1992); *Pace v. Smith*, 248 Ga. 728 (286 SE2d 18) (1982); *In re Beasley*, 243 Ga. 134 (252 SE2d 615) (1979).

[11] See Appellate Ct. Performance Standard 3.2.

[12] See *Savannah College of Art & Design v. School of Visual Arts*, 270 Ga. 791, 792-793 (515 SE2d 370) (1999).