308 Ga. 736
FINAL COPY

S20A0039.  JACKSON et al. v. RAFFENSPERGER.

BOGGS, Justice.

In June 2018, Mary Jackson and her non-profit organization, Reaching Our Sisters Everywhere, Inc. ("ROSE"), filed a complaint against the Secretary of State challenging the constitutionality of the Georgia Lactation Consultant Practice Act (the "Act"), OCGA §§ 43-22A-1 to 43-22A-13, which prohibits the practice of "lactation care and services" for compensation without a license from the Secretary of State. Specifically, Jackson and ROSE (collectively, "Appellants") allege that, under the Act, they are ineligible for a license because they lack a privately issued credential that the Act requires for licensure, even though they have other private credentials that make them equally competent to provide lactation care and services and pose no risk of harm to the public. Accordingly, they argue that the Act violates their rights to due process and equal protection under the Georgia Constitution. See Ga. Const. of 1983,

Art. I, Sec. I, Pars. I and II. The trial court granted the Secretary's motion to dismiss under OCGA § 9-11-12 (b) (6), concluding that the complaint failed to state a claim upon which relief could be granted. Specifically, the trial court ruled that Appellants failed to state a claim that the Act violates due process, because the Georgia Constitution does not recognize a right to work in one's chosen profession, and that Appellants failed to state a claim that the Act violates equal protection, because the complaint did not sufficiently allege that Appellants are similarly situated to those who are able to obtain a license.[1]

We agree with Appellants that the trial court erred in both rulings. We have long interpreted the Georgia Constitution as protecting a right to work in one's chosen profession free from unreasonable government interference. And the trial court erred in

---

[1] Appellants agreed to dismiss the other named defendants and to let the case proceed against then-Secretary of State Brian P. Kemp, who agreed to stay enforcement of the Act during the pendency of the suit. After Kemp became Governor, the parties agreed to substitute current Secretary of State Brad Raffensperger as the lead defendant, and Secretary Raffensperger later agreed to stay enforcement of the Act until the conclusion of the case, including any appeals.

concluding that Appellants are not similarly situated to lactation consultants who can be licensed because, according to the allegations in the complaint, they do the same work. Accordingly, we reverse the trial court's judgment and remand the case with direction to the trial court to reconsider the motion to dismiss.[2]

1. This appeal is from a ruling granting a motion to dismiss under OCGA § 9-11-12 (b) (6). Accordingly, we assume the truth of the facts alleged in the complaint. See *Ruth v. Cherokee Funding, LLC*, 304 Ga. 574, 574 n.2 (820 SE2d 704) (2018). Accepted as true, those facts include the following. Lactation care providers, or "LCs," provide breastfeeding education, guidance, assessment, and support to families, both in clinical settings and in their clients' homes, and have been doing so in Georgia for decades. LCs often have physical contact with their clients but are not medical providers and cannot diagnose or treat medical conditions.

Like other practitioners in the healthcare field, LCs can obtain

---

[2] The Court thanks The Goldwater Institute, Healthy Children, Mom2Mom Global, and The Pacific Legal Foundation for their briefs amicus curiae.

certification from various private accrediting entities. The two most prominent certifications are Certified Lactation Counselor ("CLC"), which Jackson and many members of ROSE have, and International Board Certified Lactation Consultant ("IBCLC"). To earn CLC accreditation, one must complete a 45-hour course and pass an examination. To become an IBCLC, a person must complete eight college-level health and science classes, six health-related continuing education courses, and at least 300 supervised and unpaid clinical hours, as well as pass an examination.

CLCs work in many settings, including in people's homes. CLCs are spread across Georgia and are therefore more available to rural Georgians and minority Georgians than are IBCLCs, who are concentrated in metro Atlanta and other urban areas and often are nurses and other healthcare professionals who lack the time to provide full-time breastfeeding support to mothers. IBCLCs typically charge their clients more and often are associated with hospitals and other institutions. In Georgia, there are only 335 IBCLCs, while there are more than 800 CLCs. According to the

complaint, there is no evidence that CLCs or other unlicensed LCs have ever harmed public health, safety, or welfare, and CLCs and IBCLCs are equally competent to provide lactation care and services to mothers and babies.

In 2013, the General Assembly first considered a bill that would require LCs to be licensed. Pursuant to OCGA § 43-1A-5 (a) (1), the Georgia Occupational Regulation Review Council (the "Council") reviewed the proposal and unanimously opposed it. The Council concluded that: (1) there was no substantive evidence that requiring LCs to become licensed would improve Georgians' health or safety; (2) because of the existence of numerous private lactation-consultant certifications, excluding all certifications except one (namely, IBCLC) would decrease Georgians' access to breastfeeding support; and (3) CLCs and IBCLCs are equally qualified to provide lactation care services in several settings, including hospitals and clinics. The 2013 bill died in committee.

In 2016, the General Assembly passed the Act, which is substantially similar to the 2013 bill. The Review Council did not

review the Act prior to its passage. The General Assembly included

the following statement of purpose in the Act:

> The General Assembly acknowledges that the application of specific knowledge and skills relating to breastfeeding is important to the health of mothers and babies and acknowledges further that the rendering of sound lactation care and services in hospitals, physician practices, private homes, and other settings requires trained and competent professionals. It is declared, therefore, to be the purpose of this chapter to protect the health, safety, and welfare of the public by providing for the licensure and regulation of the activities of persons engaged in lactation care and services.

OCGA § 43-22A-2. The Act defines "lactation care and services"

broadly, see OCGA § 43-22A-3 (5), and the definition includes

virtually everything that an LC does.[3]

---

[3] OCGA § 43-22A-3 (5) says:
"Lactation care and services" means the clinical application of scientific principles and a multidisciplinary body of evidence for evaluation, problem identification, treatment, education, and consultation to childbearing families regarding lactation care and services. Lactation care and services shall include, but not be limited to:
(A) Lactation assessment through the systematic collection of subjective and objective data;
(B) Analysis of data and creation of a lactation care plan;
(C) Implementation of a lactation care plan with demonstration and instruction to parents and communication to the primary health care provider;
(D) Evaluation of outcomes;

The Act requires anyone seeking to provide lactation care and services for compensation to obtain a state-issued license. See OCGA § 43-22A-7. But not every LC is eligible to obtain a license; in fact, *only* IBCLCs are eligible.[4] See OCGA § 43-22A-7 (1), (2).

The Act contains multiple exceptions to the licensing requirement. First, "[p]ersons licensed to practice the professions of dentistry, medicine, osteopathy, chiropractic, nursing, physician assistant, or dietetics" may engage in lactation care and services when incidental to the practice of their profession but may not hold themselves out as a "licensed lactation consultant." OCGA § 43-22A-13 (1). Second, "[d]oulas and perinatal and childbirth educators" may perform educational functions consistent with the standards of their respective occupations but may not hold themselves out as a

---

(E) Provision of lactation education to parents and health care providers; and

(F) The recommendation and use of assistive devices.

[4] The Act also gives the Secretary of State discretion to grant a license to a person if she holds "a valid license to practice lactation care and services issued by another state, political territory, or jurisdiction acceptable to the Secretary," but only if, "in the Secretary's opinion, the requirements for that license are substantially equal to or greater than the requirements of this chapter." OCGA § 43-22A-6 (1).

"licensed lactation consultant" or "licensed L.C." OCGA § 43-22A-13 (2). Third, "students, interns, or persons preparing for the practice of lactation care and services" may engage in lactation care and services under the supervision of a licensed lactation consultant or any other professional listed in the first exemption. OCGA § 43-22A-13 (3). Fourth, the Act exempts employees of the federal government, if they engage "in the practice of lactation care and services within the discharge of [their] official duties so long as [they] are performing their duties within the recognized confines of a federal installation . . . ." OCGA § 43-22A-13 (4). Fifth, the Act exempts state, county, and local government employees providing lactation care and services in the discharge of their official duties. See OCGA § 43-22A-13 (5). Finally, the Act exempts volunteers, so long as they do not hold themselves out as licensed lactation consultants, do not charge a fee for their services, and do not receive any form of compensation, monetary or otherwise, except for administrative expenses such as mileage. OCGA § 43-22A-13 (6).

2. Appellants first argue that the trial court erred in dismissing

their substantive due process claim on the ground that the Due Process Clause of the Georgia Constitution does not protect the right to pursue an occupation of one's choosing free from unreasonable government interference.[5] We agree.

Contrary to the trial court's conclusion, we have long recognized that the Georgia Constitution's Due Process Clause entitles Georgians to pursue a lawful occupation of their choosing free from unreasonable government interference. For example, in *Bramley v. State*, 187 Ga. 826 (2 SE2d 647) (1939), this Court struck down a statute that required anyone practicing photography for hire to pay a licensing fee, sit for an examination, and provide proof of good moral character. Id. We invalidated that statute on the basis that it violated the Georgia Constitution's Due Process Clause. See id. at 832. And in *Jenkins v. Manry*, 216 Ga. 538, 546 (118 SE2d 91) (1961), we held that the provisions of a statute requiring certain plumbers and steam fitters to obtain a license violated the Due

---

[5] On appeal, Secretary Raffensperger does not defend the trial court's holding on this ground.

Process Clause of the Georgia Constitution. See also *Waller v. State Const. Indus. Licensing Bd.*, 250 Ga. 529, 530 (299 SE2d 554) (1983) (same as to plumbers); *Southeastern Elec. Co. v. City of Atlanta*, 179 Ga. 514, 514 (176 SE 400) (1934) (same as to certain electricians). These decisions demonstrate that the trial court erred in concluding that an individual has *no* constitutional right to pursue a lawful occupation of her choosing.

Moreover, in dismissing Appellants' substantive due process claim, the trial court relied on the Court of Appeals' decision in *Brown v. State Bd. of Examiners of Psychologists*, 190 Ga. App. 311, 312 (378 SE2d 718) (1989). In *Brown*, the Court of Appeals concluded in relevant part that "[a]n individual does not have a constitutional right to practice a health care profession since such a right is subordinate to the state's right to regulate such a profession." 190 Ga. App. at 312 (citing *Pace v. Smith*, 248 Ga. 728 (286 SE2d 18) (1982), and *Baranan v. State Bd. of Nursing Home Administrators*, 143 Ga. App. 605 (239 SE2d 533) (1977)). However, as explained below, neither *Pace* nor *Baranan* provides support for

such a conclusion.

For starters, *Pace* is distinguishable because it involved an equal protection challenge to a ruling of the Georgia Board of Bar Examiners, and thus had nothing to do with an individual's due process right to practice a healthcare profession. See *Pace*, 248 Ga. at 729-730. Moreover, while the Court of Appeals' decision in *Baranan* is slightly more apt because it involved a due process challenge to the Georgia Board of Nursing Home Administrators' continuing education requirements, in that case the Court of Appeals recognized that "[t]he right to practice *any* profession or occupation is necessarily a valuable right and *is entitled to constitutional protection*" before considering "whether the rules enacted by the Board violate[d] *appellant's constitutional rights* by exceeding the scope of the enabling legislation." *Baranan*, 143 Ga. App. at 606 (emphasis supplied). And even though the Court of Appeals held in *Baranan* that the Board's rules were reasonable and thus passed constitutional muster, that case has never stood for the proposition that an individual has *no* right under the Georgia

Constitution to practice a healthcare profession. See id. Rather, *Baranan* stands for the unremarkable proposition that an individual's due process right to practice a healthcare profession is subject to reasonable regulation by the State. See id. As such, it is evident that the Court of Appeals erred in concluding to the contrary in *Brown*, and today we expressly disapprove of that decision in that respect.

In light of the above, the trial court erred in concluding that the complaint failed to state a claim for a violation of substantive due process on the ground that the Georgia Constitution does not protect an individual's right to pursue the lawful occupation of her choosing free from unreasonable government interference. And because that was the sole basis on which the trial court dismissed Appellants' substantive due process claim, we reverse that dismissal and remand with direction to the trial court to reconsider the motion to dismiss on that claim.

3. Appellants also argue that the trial court erred in dismissing their claim based on the Equal Protection Clause of the Georgia

Constitution on the ground that the complaint did not sufficiently allege that the Act treats similarly situated individuals differently. We agree.

The Equal Protection Clause of the Georgia Constitution provides: "Protection to person and property is the paramount duty of government and shall be impartial and complete. No person shall be denied the equal protection of the laws." Ga. Const. of 1983, Art. I, Sec. I, Par. II. This provision requires "that the State treat similarly situated individuals in a similar manner." *Bell v. Austin*, 278 Ga. 844, 846 (607 SE2d 569) (2005) (citation and punctuation omitted). "In evaluating legislation under an equal protection claim, the claimant must first establish that he is similarly situated to members of a class who are treated differently than he." *Walker v. Cromartie*, 287 Ga. 511, 512 (696 SE2d 654) (2010) (citation and punctuation).

We have consistently treated individuals who perform the same work as being similarly situated for equal protection purposes. See, e.g., *Jenkins*, 216 Ga. at 545-546 (holding that plumbers and

steam fitters who were not employees of public utility corporations were in the same class as those following the same vocation who were so employed); *Southeastern Elec. Co.*, 179 Ga. at 514 (holding that electricians performing work on new structures were in the same class as electricians working on existing structures); *Gregory v. Quarles*, 172 Ga. 45, 49 (157 SE 306) (1931) (holding that plumbers performing original work and plumbers performing repair work were members of the same class). As alleged in the complaint, IBCLCs and LCs with different certifications provide the same lactation care and services, and IBCLCs and CLCs are equally competent to provide lactation care and services to mothers and babies. In view of those allegations, which we must treat as true at the motion-to-dismiss stage, we cannot conclude that IBCLCs and LCs who have obtained different credentials are not similarly situated in the relevant respects for the sole reason that the prerequisites for obtaining the various credentials differ. Accordingly, the trial court erred in dismissing Appellants' equal protection claim on the basis that LCs without an IBCLC

certification are not similarly situated to IBCLCs.

In sum, we reverse the trial court's dismissal of Appellants' substantive due process and equal protection claims, and we remand the case with direction to the trial court to reconsider the motion to dismiss for failure to state a claim.[6]

*Judgment reversed and case remanded with direction.  All the Justices concur.*

DECIDED MAY 18, 2020.

Lactation consultants; license. Fulton Superior Court. Before Judge Dunaway.

*Heidari Power Law Group, Yasha Heidari; Institute for Justice, Renee D. Flaherty, Jaimie Cavanaugh*, for appellants.

*Christopher M. Carr, Attorney General, Kirsten S. Daughdril, Senior Assistant Attorney General, Melissa A. Tracy, Assistant Attorney General, Andrew A. Pinson, Solicitor-General, Ross W. Bergethon, Deputy Solicitor-General*, for appellee.

*Lightmas & Delk, Glenn A. Delk; Scharf-Norton Center for Constitutional Litigation, Timothy Sandefur; The Summerville Firm, Maxwell K. Thelen; Eugene R. Curry; King & Spalding, Madison H. Kitchens, John F. Sacha, Jr.*, amici curiae.

---

[6] Appellants and amici also argue that the rational basis test to be applied to their claims under the Georgia Constitution is less favorable to the government than the test drawn from federal law that Appellee describes. While amici clearly argue that the Georgia rational basis test (at least in cases like this one) differs from its federal counterpart, it is unclear whether Appellants also argue that there is a meaningful difference or whether they merely argue that Appellee misstates the rational basis test. In any event, we leave any such arguments for the trial court to address as necessary on remand.