310 Ga. 634
FINAL COPY

S20Y1100. IN THE MATTER OF CHRISTOPHER JOHN
PALAZZOLA.

PER CURIAM.

This disciplinary matter is back before this Court on the report

and recommendation of the State Disciplinary Review Board, which

reviewed the report and recommendation issued by Special Master

S. Jeffrey Rusbridge at the request of the respondent attorney,

Christopher John Palazzola (State Bar No. 559321), pursuant to Bar

Rule 4-216 (d).[1] While the Special Master recommends a six-month

suspension with conditions on reinstatement, the Review Board

---

[1] After two of Palazzola's former associates filed a grievance against him in October 2012, the State Bar initiated this matter in 2014 by filing a Formal Complaint. Palazzola filed a petition for voluntary discipline requesting a Review Panel (now called Review Board) reprimand for violating Rules 1.4, 7.1, and 8.4 (a) (4) of the Georgia Rules of Professional Conduct. The Special Master rejected the petition in 2015 for failing to contain sufficient information about the admissions of fact and admissions of misconduct. Palazzola's second petition for voluntary discipline, in which he again requested a Review Panel reprimand, this time for violating Rules 1.16 (d), 5.3, 7.1, and 8.4 (a) (4), was supported by the Special Master and not opposed by the State Bar. But this Court rejected the petition in 2017, concluding that "a reprimand is inadequate under these circumstances, particularly given the number of rules violations." *In the Matter of Palazzola*, 300 Ga. 785, 789 (798 SE2d 212) (2017).

recommends that Palazzola, who has been a member of the Bar since 1999, be suspended from the practice of law for a period of three months without conditions for violating Rules 1.16 (d), 5.3, 7.1, and 8.4 (a) (4) of the Georgia Rules of Professional Conduct found in Bar Rule 4-102. After the matter returned to this Court, Palazzola filed motions demonstrating that he voluntarily stopped practicing law by June 1, 2020, and otherwise satisfied the requirements for any suspension that we impose to begin nunc pro tunc on that date. See *In the Matter of Onipede*, 288 Ga. 156, 157 (702 SE2d 136) (2010).

The misconduct at issue involves dealings by Palazzola or his law firm's staff with three clients who were seeking to contact or were represented by a former associate who had left the firm; his law firm's false and misleading advertisements; and his dishonest failure to establish and contribute to two of his associates' retirement accounts as promised. In recommending a shorter suspension, the Review Board disagreed with the Special Master only about whether Palazzola's dishonesty regarding the retirement accounts constituted "professional conduct" within the meaning of

2

Rule 8.4 (a) (4). What sorts of deceptive conduct by a lawyer involving the management of his law office can violate Rule 8.4 (a) (4) is an unsettled and difficult question, and because we would not impose a suspension exceeding the time that Palazzola has already voluntarily stopped practicing law whichever way we decided the retirement account question, we need not resolve that question in this case. Instead, for the reasons discussed below, we suspend Palazzola from the practice of law nunc pro tunc as of June 1, 2020, a suspension from which he is hereby reinstated with conditions regarding law practice management to be met within six months of this order.

1. *The facts.*

The pertinent facts as found by the Special Master in his report are as follows.

(a) *Dealings with clients.* This matter arose from a grievance filed with the State Bar by two of Palazzola's former attorney associates who left his law firm in October 2012. When one of the former associates was employed by Palazzola's law firm, she

represented a certain client. After the associate resigned from the firm, the client contacted the firm on more than one occasion and asked to speak to the former associate, but was told that she was unavailable. Palazzola's staff did not tell the client that his lawyer had left the firm. On a later occasion, the client was told by staff that the former associate had left the law firm, but despite knowing her new address and telephone number, staff told the client that such information could not be provided to him.

In addition, Palazzola's staff knew that a second client had chosen to continue to be represented by the same former associate after she left the law firm; that subsequently, the United States Citizenship and Immigration Service ("USCIS") sent official correspondence regarding the second client's case to the former associate at Palazzola's office; and that although his staff opened the envelope containing the correspondence, they did not notify either the former associate or the second client of the receipt of the correspondence and instead returned it to the USCIS.

Finally, Palazzola knew that a third client had chosen to

4

continue to be represented by the same former associate after she left his law firm, and although the former associate asked Palazzola to forward the client's file to her, he failed to do so for weeks.

(b) *Advertisements.* Palazzola paid for weekly Spanish-language print advertisements for his law firm in *Mundo Hispanico* for various periods in 2011, 2012, and 2013. Each of these advertisements included the same photograph of the same five individuals, one of whom was Palazzola, in front of a bookcase containing what appeared to be law books, and stated (as translated into English), "More than 100 years of experience in the following legal areas," followed by a listing of approximately 17 areas of practice. Palazzola knew that on the dates of publication of the advertisements, one or more of the individuals in the photograph was not a member of or employed by his law firm.

Moreover, Palazzola knew that at the time the advertisements were published, he personally did not have 100 years of practice experience in any practice area, as he had only about 13 years of

5

experience as a practicing lawyer in 2012.[2] Palazzola stated in his answer to the Formal Complaint that he had been under the impression that the advertisements would say that the firm and its associates had combined experience of over 100 years. But he also stated that during most of 2012, the only other lawyers in his firm were the two associates previously mentioned, one of whom then had about one year of experience as a licensed lawyer and the other of whom had four. Thus, Palazzola knew at the time the advertisements were published that the statement claiming 100 years of experience in the listed practice areas was false as to every practice area and would have been false even if the statement had explicitly referenced the firm's combined experience, as there was no evidence that the combined experience of the lawyers in his firm was more than 18 years as of 2012.

In addition, one of the advertisements stated under the law firm's Internet address, "Atlanta · Miami · Los Angeles" — but

---

[2] Although the advertisements also were published during parts of 2011 and 2013, the Special Master focused on 2012, which was the bulk of the time that the advertisements ran.

Palazzola had no office in Miami or Los Angeles. Palazzola indicated to the Special Master that he had listed Miami and Los Angeles in the advertisement based on his "of counsel" relationship with another law firm, which was not stated in the advertisement. Moreover, the law firm with which Palazzola had an "of counsel" relationship also did not have offices in Florida or California, indicating on its own letterhead only that it had "of counsel" relationships with two other firms located in Florida and California.

(c) *Retirement accounts.* Palazzola promised the two attorney associates mentioned above that he would set up retirement accounts for them and that his law firm would match their respective contributions up to a certain percentage of salary. Palazzola then caused the retirement account contributions to be withheld from their salaries according to their elections, and noted as much on the pay stubs of their paychecks for each pay period. For each pay period, Palazzola, in his capacity as the owner of his law firm, received from the payroll service he used for the firm a check that included the amount of the associates' supposed retirement

account withholdings. However, Palazzola did not actually establish the retirement accounts or match his associates' contributions during the several months of the associates' employment; instead, he placed their contributions in a non-interest bearing law firm account.

After resigning from the law firm in 2012, the associates filed complaints against Palazzola with the United States Department of Labor, which during the course of its investigation established the amount that he owed to each of the associates, including interest. In 2014, Palazzola paid each former associate the full respective amounts owed, including interest, and admitted that he should have done so sooner, as both associates had resigned from his law firm two years earlier.[3]

---

[3] The Special Master did not make a finding regarding the amount of money that Palazzola failed to pay into the retirement accounts. The record in his second petition for voluntary discipline includes a letter from the Labor Department to Palazzola stating that after examining his law firm's bank records, the department had determined that he failed to forward employee contributions of $1,128.56 and employer contributions of the same amount on behalf of the two associates.

2. *The Special Master's conclusions of law.*

The Special Master reached the following conclusions of law in his report.

(a) *Dealings with clients.* The Special Master concluded that Palazzola violated Rule 1.16 (d)[4] when he failed to promptly provide the third client's file to his former associate. See *In the Matter of Hooks*, 292 Ga. 781, 782 (741 SE2d 645) (2013) (attorney's failure to supply a client file to replacement counsel is a violation of Rule 1.16 (d)). The Special Master noted that Comment 9 to Rule 1.16 says, "[e]ven if the lawyer has been unfairly discharged by the client, a lawyer must take all reasonable steps to mitigate the consequences to the client," and that even where an attorney has not been paid by a client, it is improper to withhold the client's file. See State Bar of

_____

[4] Rule 1.16 (d) says:
Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned.
The maximum sanction for a violation of Rule 1.16 (d) is a public reprimand.

Georgia, Formal Advisory Op. No. 87.5 (Sept. 26, 1988).

The Special Master also concluded that Palazzola violated Rule 5.3[5] when he failed to properly supervise or instruct his staff so that they would act in accordance with his professional obligations. Specifically, the Special Master held that when Palazzola's staff failed to tell the first client that the former associate handling his matter had left the firm and told him that they could not provide contact information for her, their actions deviated from Rule 1.4 (a) (3) and (4), which respectively require a lawyer to keep his client reasonably informed about the status of a matter and to promptly comply with reasonable requests for information. Likewise, when Palazzola's staff received official correspondence in the second

---

[5] Rule 5.3 says in pertinent part that, "[w]ith respect to a nonlawyer employed or retained by or associated with a lawyer":

> (a) a partner, and a lawyer who individually or together with other lawyers possesses managerial authority in a law firm, shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the person's conduct is compatible with the professional obligations of the lawyer;
> (b) a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer[.]

The maximum sanction for a violation of this rule is disbarment.

client's case that they failed to forward to either the client or his new attorney (the former associate), they again acted contrary to the requirements of Rule 1.4 (a) (3), and this conduct also violated Rule 1.16 (d).

Finally, the Special Master noted Comment 2 to Rule 5.3, which says in pertinent part:

> Paragraph (a) [of the rule] requires lawyers with managerial authority within a law firm to make reasonable efforts to establish internal policies and procedures designed to provide reasonable assurance that nonlawyers in the firm will act in a way compatible with the Georgia Rules of Professional Conduct. See Comment [1] to Rule 5.1. Paragraph (b) applies to lawyers who have supervisory authority over the work of a nonlawyer. . . .

The Special Master held that Palazzola failed to meet this requirement and that his staff had not been properly prepared to meet his professional obligations in relation to these clients.

(b) *Advertisements.* The Special Master concluded that Palazzola violated Rule 7.1 (a) (1)[6] when for various periods in 2011,

---

[6] Rule 7.1 (a) (1) says:
   A lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services. By way of illustration,

11

2012, and 2013, he published advertisements in *Mundo Hispanico* that contained multiple material misrepresentations of fact and omissions of fact necessary to make the statements considered as a whole not materially misleading. Specifically, the Special Master held that the photographs of individuals in front of a bookcase containing what appeared to be law books necessarily communicated to any reasonable reader that all the pictured individuals were part of Palazzola's law firm, which was not the case, and that regardless of whether they were direct material misrepresentations of fact or materially misleading by omission, the advertisements violated Rule 7.1 (a) (1). The Special Master further held that the statement "[m]ore than 100 years of experience" in 17 areas of practice vastly and unreasonably exaggerated Palazzola's and his associates' actual total legal experience, such that these advertisements violated Rule 7.1 (a) (1). The Special Master held

but not limitation, a communication is false or misleading if it . . . contains a material misrepresentation of fact or law or omits a fact necessary to make the statement considered as a whole not materially misleading[.]

The maximum sanction for a violation of this rule is disbarment.

that Palazzola also violated Rule 7.1 (a) (1) by listing "Atlanta · Miami · Los Angeles" in one of the advertisements because it communicated to a reasonable reader that he had law offices in all three cities, which was materially false.

In addition, the Special Master concluded that Palazzola violated Rule 8.4 (a) (4),[7] as each instance of Palazzola's false and misleading advertising was an instance of professional conduct involving dishonesty, fraud, deceit, and misrepresentation.

(c) *Retirement accounts*. Finally, the Special Master concluded that Palazzola also violated Rule 8.4 (a) (4) in connection with the retirement benefits that he promised his two associates as part of their compensation. Palazzola caused retirement contributions to be withheld from the associates' salaries, which were noted as such on the pay stubs of their paychecks, and he received checks that included the amount of the withheld retirement contributions from

---

[7] Rule 8.4 (a) (4) says: "It shall be a violation of the Georgia Rules of Professional Conduct for a lawyer to . . . engage in professional conduct involving dishonesty, fraud, deceit or misrepresentation[.]" The maximum sanction for a violation of Rule 8.4 (a) (4) is disbarment.

the payroll service that he used for his firm. However, Palazzola never set up a retirement account during the several months of the associates' employment, nor did he pay the withheld earnings or his firm's matching contributions to a retirement plan. Instead, their contributions were placed in a non-interest-bearing law firm account. The associates had to establish their rights to the promised retirement funds by filing a complaint against Palazzola with the United States Department of Labor. The Special Master concluded that this conduct was "intended or likely to mislead another" in violation of Rule 8.4 (a) (4), quoting *In the Matter of West*, 301 Ga. 901, 904 (804 SE2d 340) (2017).

3. *The Special Master's recommendation of discipline.*

The Special Master looked to the ABA Standards for Imposing Lawyer Sanctions for guidance in determining the appropriate punishment for Palazzola's misconduct. See *In the Matter of Morse*, 266 Ga. 652, 653 (470 SE2d 232) (1996). The Special Master explained that because Palazzola's conduct in regard to his violations of Rules 1.16 (d), 7.1 (a) (1) and 8.4 (a) (4) was shown to

14

be knowing and because the violations could have caused injury to clients, the public, or the legal system, a suspension was an appropriate sanction. See ABA Standard 7.2. The Special Master noted that ABA Standard 7.3 states that a "[r]eprimand is generally appropriate when a lawyer negligently engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system," and that Palazzola's violations of Rule 5.3 were shown to be negligent, as he admitted that he failed to adequately ensure that his staff acted compatibly with his professional obligations in their relations with a client and with a former client.

With regard to mitigating factors, the Special Master found that Palazzola had no prior disciplinary history, see ABA Standard 9.32 (a); that he made full restitution of the amounts found to be owed by the United States Department of Labor (although the Special Master found the weight of this factor attenuated by his delay in payment), see ABA Standard 9.32 (d); and that he was remorseful, as evidenced by his petitions for voluntary discipline,

see ABA Standard 9.32 (l).  With regard to aggravating factors, the Special Master found that Palazzola engaged in a pattern of misconduct, as his violations of Rules 1.16 (d) and 5.3 affected multiple clients, see ABA Standard 9.22 (c); that there were multiple offenses, see ABA Standard 9.22 (d); and that he had substantial experience in the practice of law, see ABA Standard 9.22 (i).

Considering all of the facts and circumstances of the violations of the Georgia Rules of Professional Conduct, and the ABA Standards, the Special Master recommended that this Court impose on Palazzola a suspension from the practice of law for six months, with reinstatement conditioned upon his completion of an assessment of his law practice, as directed by the State Bar's Law Practice Management Program, and his providing a certificate of compliance with any recommendation resulting therefrom by the director of the program.  The Special Master did not cite any of this Court's disciplinary cases as precedent for his recommendation.

4. *Palazzola's exception to the Special Master's report.*

Palazzola filed an exception to the Special Master's report,

16

arguing that a public reprimand was the appropriate level of discipline; he cited no precedent to support that argument. The State Bar filed a response, noting that Palazzola offered no factual or legal challenges to the Special Master's report and arguing that his requested discipline was inappropriate because this Court had previously rejected his request for a reprimand. See footnote 1 above. The State Bar asserted that this Court regularly disbars attorneys for making deliberate deceitful statements, citing two cases involving misconduct not similar to this matter.[8] The State Bar also noted that this Court has imposed suspensions on attorneys who, like Palazzola, committed multiple rule violations, citing several cases involving mostly different types of rule violations than the rules that Palazzola violated.[9] In sum, the State Bar argued that the Special Master's recommended discipline was authorized by the

---

[8] See *In the Matter of McKenna*, 282 Ga. 469, 470 (651 SE2d 80) (2007); *In the Matter of Shehane*, 276 Ga. 168, 170 (575 SE2d 503) (2003).

[9] See *In the Matter of Lank*, 300 Ga. 479, 482 (769 SE2d 252) (2017); *In the Matter of Huggins*, 291 Ga. 92, 92-93 (727 SE2d 500) (2012); *In the Matter of Terrell*, 291 Ga. 91, 92 (727 SE2d 499) (2012); *In the Matter of LeDoux*, 288 Ga. 777, 778 (707 SE2d 88) (2001).

17

rules, supported by this Court's cases, and not inappropriate given Palazzola's history of repeated, intentional falsehoods related to his practice of law.

5. *The Review Board's report and recommendation.*

The Review Board adopted the Special Master's findings of fact and approved the Special Master's conclusions of law with one significant exception. With respect to the retirement accounts, the Special Master found that "[f]or each pay period, [Palazzola], in his professional capacity as a lawyer operating a law firm with lawyer employees, received from the payroll service he used for his firm a check which included the amount of the [associates' retirement account] withholdings." The Review Board held that whether Palazzola was acting "in his professional capacity as a lawyer" with regard to the retirement accounts was a question of law rather than a finding of fact.[10] And with regard to the Special Master's

---

[10] Despite this not-really-a-finding-of-fact holding, the Review Board "replace[d]" the Special Master's finding with the following finding of fact: "For each pay period, [Palazzola] in his capacity as the owner of a law firm received from the payroll service he used for his law firm a check which included the amount of [the associates' retirement account] withholdings."

conclusion that Palazzola's dishonesty and misrepresentations with regard to his associates' retirement accounts violated Rule 8.4 (a) (4), the Review Board concluded that such conduct did not constitute "professional conduct" within the meaning of that rule.

The Review Board noted that Rule 8.4 (a) (4) applies to a broad range of conduct by a lawyer acting in his or her professional capacity as a lawyer, including conduct related to clients, opposing parties, and courts, citing *In the Matter of Moore*, 300 Ga. 407, 408-409 (792 SE2d 324) (2016) (one-year suspension with conditions for violating Rules 3.3, 4.1, and 8.4 (a) (4) where the lawyer failed to serve the opposing party with pleadings, falsely stated in certificates of service that he had done so, and misrepresented communications with the opposing party); and *In the Matter of Wright*, 291 Ga. 841, 842-844 (732 SE2d 275) (2012) (public reprimand and six-month suspension where the lawyer violated Rules 3.3 and 8.4 (a) (4) by making false statements to the Court of Appeals and continued to

deny wrongdoing in the disciplinary proceedings).[11]

The Review Board then noted that this Court has specifically considered the meaning of "professional conduct" in the context of Rule 8.4 (a) (4) in only a few disciplinary cases, including *In the Matter of Brooks*, 249 Ga. 556, 557-558 (292 SE2d 686) (1982), where we held that the attorney's "emphasis of and reliance on his professional status and abilities" in purchasing a car for which he failed to assume the seller's loan, including in dissuading the seller — who was not his client — from consulting a nearby attorney based on his assurances that he was an attorney, amounted to "professional conduct" within the meaning of Standard 4, which was the former version of Rule 8.4 (a) (4); and *In the Matter of Harrison*, 255 Ga. 77, 78-79 (335 SE2d 564) (1985), where we concluded that the attorney, who was appointed to act as the administrator of an estate by a probate court judge who required all administrators to retain counsel and who signed all pleadings of the estate for his law

---

[11] The Review Board also cited *In the Matter of Grant*, 287 Ga. 131 (694 SE2d 647) (2010), but that disciplinary matter did not involve a Rule 8.4 (a) (4) violation.

20

firm, but failed to retain such counsel, and who the probate court had held was acting in a dual capacity as attorney and administrator, was acting in a professional capacity within the meaning of Standard 4 when he misappropriated the estate's funds. The Review Board said that in both of those cases, the lawyers "performed functions unique to the practice of law and abused their status and expertise as a lawyer to steal funds and property."

In this case, the Review Board held, there was no allegation that in failing to set up the retirement accounts, Palazzola misappropriated the funds, that he was acting in his role as a legal representative for the employees, that he was presenting a matter to a tribunal, or that he was otherwise acting in his capacity as a lawyer. Thus, while the Review Board did not condone his failure to set up the retirement accounts, it concluded that his conduct did not constitute "professional conduct" within the meaning of Rule 8.4 (a) (4).

The Review Board also expressed concern that a broad application of Rule 8.4 (a) (4) could result in significant implications

for lawyers with regard to the management of their law firms, including in disputes over employee benefits, hiring and firing practices, and agreements with support personnel and vendors. The Review Board pointed out that there are many remedies available to resolve disputes with lawyers relating to business, employment, and client matters outside of the disciplinary process. Finally, the Review Board noted that Palazzola's admission of a Rule 8.4 (a) (4) violation relating to the retirement accounts was not binding, citing a case in which this Court held that the facts admitted by an attorney did not support the legal conclusion that he had violated Rule 1.2 (d), even though he had admitted such a violation. See *In the Matter of West*, 299 Ga. 731, 732 (791 SE2d 781) (2016).

The Review Board agreed with the Special Master's enumeration of factors in mitigation and aggravation of discipline. As for the level of discipline to impose, the Review Board rejected reliance on the cases that the State Bar cited in its response to Palazzola's exception, explaining that those cases involved more serious abandonment of legal matters, misuse of trust accounts,

22

fabricating documents to deceive the State Bar, failing to account for property, and failure to respond to disciplinary authorities, such that they were not instructive on the facts of this case. The Review Board concluded that while there were no disciplinary cases with these precise facts, cases involving similar violations provided guidance, citing *In the Matter of Farnham*, 300 Ga. 645, 645, 647 (797 SE2d 84) (2017) (public reprimand where the attorney violated Rules 1.3, 1.16, and 5.3 and had previously been suspended erroneously for more than one month); *In the Matter of Saxton*, 299 Ga. 742, 742-743 (791 SE2d 773) (2016) (three-month suspension for violation of Rules 1.8 (h) and 5.3 (a) for a lawyer with two prior disciplinary sanctions and multiple instances of misconduct); and *In the Matter of Adams*, 287 Ga. 815, 815, 818-819 (700 SE2d 383) (2010) (public reprimand with conditions for violations of Rules 1.3, 1.4, 1.16, 5.3, and 9.3 by a lawyer with a substance abuse problem for which he was treated).

The Review Board ultimately recommended that Palazzola be suspended from the practice of law for three months. The Review

Board explained that in making its recommendation, it had taken into consideration the procedural history of this case, the position of the State Bar voicing no objection to a Review Panel reprimand in response to Palazzola's second petition for voluntary discipline, and this Court's position that such a reprimand would be inappropriate under these circumstances. See footnote 1 above. The Review Board noted that there was no allegation that the clients' cases were harmed by the short delay in receiving the former associate's contact information and forwarding the one file to her, that this is Palazzola's first disciplinary violation, and that he had expressed remorse. The Review Board also acknowledged Palazzola's willingness to bring this matter to a conclusion by petitioning twice for voluntary discipline.[12] The Review Board did not address the Special Master's recommendation that Palazzola's reinstatement from a suspension be conditioned on his compliance with the Law

---

[12] We do not see this as a significant factor in Palazzola's favor, as he filed an exception requesting that the Review Board impose only a reprimand notwithstanding this Court's unequivocal prior conclusion that "a reprimand is inadequate under these circumstances, particularly given the number of rules violations." *Palazzola*, 300 Ga. at 789.

Practice Management Program's recommendations for the management of his law practice.

Neither party filed exceptions to the Review Board's report and recommendation.

6. *Analysis.*

(a) *Imposition of a suspension with conditions.* Putting aside for the moment the question of whether Palazzola's dishonest conduct regarding his associates' retirement accounts violated Rule 8.4 (a) (4), we agree (as the Review Board did) with the Special Master's findings of fact, conclusions of law, and enumeration of applicable mitigating and aggravating circumstances. As indicated by our previous rejection of Palazzola's request for a reprimand, his misconduct, which involved a variety of acts violating multiple disciplinary rules, warrants a suspension from the practice of law. Without a Rule 8.4 (a) (4) violation regarding the retirement accounts, we would tend to agree with the Review Board that a three-month suspension would be adequate, particularly as there was no evidence that any client's case was actually harmed, this is

25

the first disciplinary proceeding against Palazzola, and he has expressed remorse. If Palazzola did violate Rule 8.4 (a) (4) as to his associates and their retirement accounts, however, we might instead agree with the Special Master's recommendation of a six-month suspension, although that would be the longest suspension we would impose.

In either event, because some of Palazzola's misconduct relates to the management of his law practice and because he will be entitled to operate his own law practice again upon completion of a suspension, we agree with the Special Master that he should complete an evaluation of his law practice by the State Bar's Law Practice Management Program and provide to the State Bar's Office of General Counsel a certificate of compliance with any recommendations resulting therefrom by the director of the program. Palazzola shall comply with these conditions within six months of his reinstatement to the practice of law. See, e.g., *Moore*, 300 Ga. at 409; *In the Matter of Smith Fitch*, 298 Ga. 379, 381 (782 SE2d 40) (2016).

(b) *Imposition of the suspension nunc pro tunc.* In a motion filed in this Court after the Review Board's report was issued and the matter returned here, Palazzola asked that we impose any discipline nunc pro tunc to June 1, 2020, the date on which the motion baldly asserted that he closed his law practice. As the State Bar pointed out in its response to his request, Palazzola did not make the showing required under *In the Matter of Onipede*, 288 Ga. 156 (702 SE2d 136) (2010), to support nunc pro tunc discipline. See id. at 157 ("[W]hen an attorney requests [discipline] nunc pro tunc, it is the lawyer's responsibility to demonstrate that [he] voluntarily stopped practicing law, the date on which [his] law practice ended, and that [he] complied with all the ethical obligations implicated in such a decision, such as assisting clients in securing new counsel and facilitating the transfer of client files and critical information about ongoing cases to new counsel."). We therefore issued an order denying Palazzola's motion, but without prejudice to his renewing it with a proper showing to support it.

Palazzola promptly filed a second motion requesting imposition

27

of any suspension nunc pro tunc, which was verified by and supported with an affidavit from Palazzola making the factual showings required by *Onipede*; he then filed a verified supplement and additional affidavit providing even more details about the termination of his law practice and the steps he took to protect his clients. The State Bar now has no objection to the imposition of any suspension to begin nunc pro tunc on June 1, 2020.

(c) *Palazzola's conduct regarding the retirement accounts.* As noted above, Rule 8.4 (a) (4) says: "It shall be a violation of the Georgia Rules of Professional Conduct for a lawyer to . . . engage in *professional conduct* involving dishonesty, fraud, deceit or misrepresentation." (emphasis added). In concluding that Palazzola's dishonest conduct regarding his associates' retirement accounts violated this rule, the Special Master cited only our statement in *West* that Rule 8.4 (a) (4) prohibits attorney conduct that is "*intended or likely to mislead another.*" 301 Ga. at 904 (citation and punctuation omitted; emphasis in original). But the conduct in *West* involved an attorney's misstatement made in an

28

application for asylum submitted to immigration authorities for his client, see id. at 901-902, conduct that is unquestionably "professional" in nature. Cases involving attorney dishonesty, fraud, deceit, or misrepresentation toward clients and tribunals come rather obviously within the scope of Rule 8.4 (a) (4). Cases where the lawyer's deceptive conduct occurs while he acts in a dual capacity (like *Harrison*) or invokes his status and authority as a lawyer (like *Brooks*) also fit within the phrase "professional conduct."

As the Review Board recognized, however, that phrase is not so capacious as to encompass *everything* a lawyer does in the management of a law office (or for that matter, in life). Many things that lawyers do while operating their law businesses are no different than what other business people do in the operation of any business, and there is no need for the State Bar to regulate activities that require no specialized professional competence or ethics and pose no threat to the public's confidence in the legal system. See *In the Matter of Fry*, 302 Ga. 370, 371 (806 SE2d 604) (2017) (explaining

29

that the primary purposes of the attorney disciplinary system are to protect clients and the public from attorneys who are unqualified to practice law due to incompetence and unprofessional conduct and to protect the public's confidence in the legal system).

Yet lawyers often interact with their clients and present themselves professionally to the public through their law offices, and so there may be some deceptive or fraudulent conduct regarding the management of a law firm that, even if it does not directly involve misrepresentations to clients or courts, falls within the meaning of "professional conduct." For example, a lawyer's fraudulent misappropriation of funds from his law firm, even if it did not involve funds belonging to clients, might be significant enough to qualify as professional conduct. Such deceptive conduct could amount to a serious crime that — even if it does not involve client funds — would upon conviction generally be disciplined by disbarment. See Rule 8.4 (a) (1); *In the Matter of Houser*, 299 Ga. 284, 285-286 (787 SE2d 689) (2016) ("[D]isbarment is generally the appropriate sanction when a lawyer engages in serious criminal conduct or conduct

involving . . . misrepresentation or fraud."). Even if a criminal prosecution for such felonious conduct has not (yet) occurred, the conduct might implicate the lawyer's ability to continue to properly represent clients as well as the public's perception of the legal system. We have one case (not cited by the Review Board) that appears to be of this ilk. See *In the Matter of Glass*, 279 Ga. 666, 666 (619 SE2d 677) (2005) (accepting a petition for voluntary discipline and imposing a 12-month suspension where the attorney admitted a violation of Rule 8.4 (a) (4) based on his misappropriation of $47,000 from his former law firm operating accounts (rather than trust accounts), but also paid full restitution and had other significant mitigating factors).

In no prior disciplinary opinion that we have found, however, have we set forth a clear construction of the term "professional conduct" as used in Rule 8.4 (a) (4), in general or in the particular context of law firm management. Indeed, almost all of the cases in which we have addressed Rule 8.4 (a) (4) violations contain little if any analysis of the text or reach of the rule.

31

Recognizing that other states also have attorney disciplinary systems, we also have looked outside Georgia for guidance. The ABA Model Rules of Professional Conduct, on which many states' professional conduct rules are generally based, includes a rule with language similar — but not identical — to Georgia's Rule 8.4 (a) (4). ABA Model Rule 8.4 (c) provides: "It is *professional misconduct* for a lawyer to . . . engage in *conduct* involving dishonesty, fraud, deceit or misrepresentation." (emphasis added). Several states with rules identical or nearly identical to ABA Model Rule 8.4 (c) have applied those rules to lawyers' dishonest conduct involving their law firm employees, including in retirement account situations comparable to the one in this case. See, e.g., *In the Matter of Thompson*, 441 P3d 1027, 1031, 1033, 1035-1036 (Kan. 2019) (disbarring an attorney who engaged in conduct involving dishonesty in violation of Kansas Rule 8.4 (c) when, among other things, she withheld funds from her employees' paychecks but did not deposit those funds into the employees' 401(k) accounts, noting that "[r]etaining [the] salary deferrals could also constitute theft"); *In the Matter of Sutton*, 405

32

P3d 1205, 1209, 1213 (Kan. 2017) (three-year suspension for an attorney who engaged in conduct involving dishonesty in violation of Kansas Rule 8.4 (c) by withholding funds from an associate attorney and other employees' paychecks, failing to deposit the funds into the employees' IRA accounts, and instead converting the funds to cover professional expenses); *In the Matter of Disciplinary Proceedings Against Kalal*, 704 NW2d 575, 577-578, 581 (Wis. 2005) (six-month suspension for an attorney who engaged in conduct involving dishonesty in violation of Wisconsin Rule 8.4 (c) by failing to deposit funds that had been deducted from an associate attorney and other employees' paychecks as contributions for a 401(k) into the plans or to match employer's contributions to the plans as required); *Attorney Grievance Comm. of Md. v. Snyder*, 793 A2d 515, 534 (Md. 2002) (noting that the attorney had received a private reprimand in a prior proceeding for violating Maryland's Rule 8.4 (c) by failing to pay 401(k) contributions that had been withheld from employee salaries within 90 days of the deductions as required by law).

But those opinions, like ours, include little if any legal analysis of the rules they hold were violated, and in particular they do not discuss whether those rules have any limits with regard to their application to a lawyer's management of a law office (or to a lawyer's life in general). Moreover, those rules (like the ABA Model Rule) have the modifier "professional" in a different place than the Georgia rule, although we have not fully analyzed the effect of that textual distinction in light of the overall structure and history of the Georgia rules.

Against this fuzzy background, whether Palazzola's dishonest conduct with respect to his associates' retirement accounts constituted "professional conduct" in violation of Rule 8.4 (a) (4) does not have a clear cut answer. On one hand, Palazzola was acting as a fiduciary in handling the retirement funds of his associate attorneys — part of their remuneration for representing clients on behalf of the law firm — and it is important that lawyers properly handle money entrusted to them. Cf. Rule 1.15 (I) (Safekeeping Property), Comment 1 ("A lawyer should hold property of others

34

with the care required of a professional fiduciary."); *In the Matter of Huddleson*, 297 Ga. 726, 730-731 (777 SE2d 438) (2015) ("[T]his [C]ourt's primary responsibility is to the public to see that those who are admitted to practice [law] are ethically cognizant and mature individuals who have the character to withstand the temptations which are placed before them as they handle other people's money and affairs." (citation and punctuation omitted)). It is also important that disputes between lawyers in a firm, including disputes arising from dishonest and misleading conduct, do not cause harm to clients, including the harms that may result from lawyers who have been lied to leaving the firm.

On the other hand, Palazzola's dishonest conduct involved no client funds. In addition, although the Special Master did not make pertinent findings, it appears that the amount of funds at issue was fairly small, see footnote 3 above, and that those funds were not misappropriated for Palazzola's personal benefit (at least by the time his deception was discovered), so this is not a case clearly involving serious criminal conduct. Moreover, while Palazzola's

35

deception regarding the associates' retirement accounts appears to have been among the reasons the associates left his firm, the record does not indicate if it was the only reason. And although their departure contributed to Palazzola's subsequent violations of Rules 5.3 and 1.16 (d), there is no evidence that any client suffered actual harm as a result.

Furthermore, on this question of whether Palazzola's dishonesty regarding the retirement accounts constituted "professional conduct," and where we should draw the line for such conduct in the management of a law firm, we have no briefing from the parties, almost no analysis by the Special Master, and incomplete analysis by the Review Board. And we need not decide the question — and risk drawing the line in the wrong place — in this case because as explained above, even if we concluded that Palazzola did violate Rule 8.4 (a) (4), his suspension nunc pro tunc to June 1, 2020, would be finished by now. Accordingly, we leave

this difficult question to be resolved in a future case.[13]

(d) *Conclusion.* For these reasons, Christopher John Palazzola is hereby suspended from the practice of law nunc pro tunc as of June 1, 2020, and he is hereby reinstated with the conditions set forth above.

*Suspended nunc pro tunc with conditions; reinstated. Melton, C.J., Nahmias, P. J., and Ellington and McMillian, JJ., concur. Boggs, Peterson, and Bethel, JJ., concur in the judgment and Divisions 1-5 and 6 (a), (b), and (d), and concur specially in Division 6 (c). Warren, J., not participating.*

PETERSON, Justice, concurring specially.

---

[13] We note that this Court has not previously disciplined an attorney for violating Rule 8.4 (a) (4) based on false and misleading advertisements, although courts in other states have concluded that an attorney violated their rules similar to ABA Model Rule 8.4 (c) by using false advertisements and by making false communications regarding the attorney's qualifications. See, e.g., *In the Matter of Cole*, 738 NE2d 1035, 1037, 1039 (Ind. 2000) (public reprimand for an attorney who violated Indiana Rule 8.4 (c) by allowing himself to be identified as a county "Prosecutor" in an advertisement when in fact he was not the elected prosecutor); *State ex rel. Oklahoma Bar Assn. v. Leigh*, 914 P2d 661, 666 (Okla. 1996) (use by an attorney who failed the CPA exam of the title "CPA" on his letterhead to support a billing rate on his statements for services constituted professional misconduct under Oklahoma Rule 8.4 (c), warranting a 180-day suspension). Unlike dishonest conduct involving the internal management of a law firm, however, a lawyer's false and misleading advertising, the purpose of which is to attract clients to whom the lawyer will provide professional services, falls more neatly within the phrase "professional conduct."

I join the judgment of the Court and all divisions of the Court's opinion except Division 6 (c). I agree with Division (6) (c) that whether misconduct involving the management of a law firm constitutes "professional conduct" that violates Georgia Rule of Professional Conduct Rule 8.4 (a) (4) is a difficult question, and one largely of first impression. I agree that this case does not present a good vehicle for deciding that difficult question. And I agree that we need not decide that question to decide this case.

It is precisely for those reasons that I do not join Division 6 (c) in full. The Division makes a number of observations about hypothetical situations that might violate the Rule. I do not join in those observations. The Division cites certain of our Rule 8.4 (a) (4) decisions, but I am not at all confident that those decisions offer us any meaningful guidance about the meaning of the Rule's text. None of our previous decisions have made any effort to interpret that text, much less to do so according to the principles that we ordinarily apply in the interpretation of legal text. See, e.g., *Deal v. Coleman*, 294 Ga. 170, 172-173 (1) (a) (751 SE2d 337) (2013) ("[W]e must afford

the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would." (cleaned up)); *Olevik v. State*, 302 Ga. 228, 236 (2) (c) (i) (806 SE2d 505) (2017) ("In determining the original public meaning of a constitutional provision, we consider the plain and ordinary meaning of the text, viewing it in the context in which it appears and reading the text in its most natural and reasonable manner."); see also *City of Guyton v. Barrow*, 305 Ga. 799, 805 (828 SE2d 366) (2019) (citing above principles from *Deal* and *Olevik* and noting that they "apply to all positive legal rules" in applying them to agency regulations).

For similar reasons, I am even more skeptical that we will find useful guidance in opinions of other states. Those opinions apply different rules with different text, and few if any of them involve serious textual interpretation even of that different text.

I would also observe that not every bad thing a lawyer does should jeopardize the lawyer's ability to work. For that matter, I'm

not at all sure that the inherent authority to regulate the practice of law that the Georgia Constitution vests in this Court includes the authority to adopt such a far-reaching rule even if the Court wanted to. And even if the Court's inherent constitutional authority extended so broadly, other provisions of the Georgia Constitution might prohibit the Court from exercising that authority like this. Georgia lawyers are people too, and the Georgia Constitution's Due Process Clause guarantees to the people of Georgia the "right to work in one's chosen profession free from unreasonable government interference." *Jackson v. Raffensperger*, 308 Ga. 736, 737 (843 SE2d 576) (2020).

This Court has long exercised the solemn responsibility to protect the public by regulating the practice of law. The more core to the protection of the public a regulation is, the more clearly the exercise of our authority to regulate is "reasonable." But the further from that core our regulation strays, the greater the risk that our reach exceeds our power. It's not at all clear to me that the dishonest conduct involving associates' retirement accounts that is at issue

40

here has anything to do with the protection of the public. (And this, of course, considers only the right to work long guaranteed by the Georgia Constitution's Due Process Clause; other constitutional rights may require us to tread even more lightly.)

For all these reasons, I do not join Division 6 (c). I am authorized to state Justice Boggs and Justice Bethel join in this concurrence.

DECIDED DECEMBER 21, 2020.
Suspension with conditions; reinstatement.
*Paula J. Frederick, General Counsel State Bar, William D. NeSmith III, Deputy General Counsel State Bar, Jenny K. Mittelman, William Van Hearnburg, Jr., Assistant General Counsel State Bar*, for State Bar of Georgia.