NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: October 24, 2023

S23Y0974. IN THE MATTER OF MARSHA WILLIAMS MIGNOTT.

PER CURIAM.

This disciplinary matter arises from the conduct of Marsha Williams Mignott (State Bar No. 141933), a member of the State Bar of Georgia since 2005. Mignott was accused of learning information from a prospective client (who never became an actual client) and then using and revealing that information in a later proceeding adverse to that prospective client, who then filed the grievance underlying this matter. The State Bar alleged that Mignott's conduct violated Rules 1.8 (b) and 1.9 (c) (2) of the Georgia Rules of Professional Conduct ("GRPC"), found in Bar Rule 4-102 (d). The maximum penalty for a single violation of either of those Rules is disbarment. The Special Master concluded that Mignott had

violated both Rules, and — after finding that numerous aggravating factors applied — recommended that she receive a two-year suspension. Mignott petitioned for review by the State Disciplinary Review Board pursuant to Bar Rule 4-214; the Review Board adopted the Special Master's findings of fact and conclusions of law but recommended that Mignott receive a one-year suspension. As explained below, we conclude that Mignott did not violate either Rule 1.8 (b) or 1.9 (c) (2) because, as the Bar stipulated, Mignott never formed an attorney-client relationship with the grievant, and the provisions of the GRPC with which Mignott was charged do not apply to prospective clients. We therefore impose no discipline and dismiss this matter.

Rule 1.8 (b) provides that a lawyer "shall not use information gained in the professional relationship with a client to the disadvantage of the client unless the client gives informed consent, except as permitted or required by these rules." Rule 1.9 (c) (2) provides that a lawyer "who has formerly represented a client in a matter . . . shall not thereafter: reveal information relating to the

representation except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client." The Special Master concluded that Mignott violated Rule 1.8 (b) and Rule 1.9 (c) (2) because she had learned information about the grievant during a consultation with the grievant about possible representation, and then later used and revealed that information in a subsequent proceeding adverse to the grievant. The Special Master concluded that the applicable versions of Rules 1.8 (b) and 1.9 (c) (2) applied to information gained from prospective clients as well as actual clients, because at the time the State Disciplinary Board found probable cause in Mignott's case, former Comment 4A to Rule 1.6 provided:

> Information gained in the professional relationship includes information gained from a person (prospective client) who discusses the possibility of forming a client-lawyer relationship with respect to a matter. Even when no client-lawyer relationship ensues, the restrictions and exceptions of these Rules as to use or revelation of the information apply, e.g., Rules 1.9 and 1.10.[1]

---

[1] Rule 1.6 provides in relevant part that a lawyer "shall maintain in confidence all information gained in the professional relationship with a client," unless the lawyer receives the client's informed consent. GRPC 1.6 (a). The Bar did not charge Mignott with a violation of Rule 1.6.

3

The Review Board adopted wholesale the Special Master's legal conclusions.

We disagree with the conclusion of the Review Board and Special Master that Mignott's charged conduct violated Rules 1.8 (b) and 1.9 (c) (2). We construe the GRPC "according to the principles that we ordinarily apply in the interpretation of legal text." *In the Matter of Palazzola*, 310 Ga. 634, 649-650 (853 SE2d 99) (2020) (Peterson, J., concurring specially); see also *Deal v. Coleman*, 294 Ga. 170, 172-173 (1) (a) (751 SE2d 337) (2013) ("[W]e must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read

---

Although the Special Master considered the relevant time for determining the applicable rules was the time of the probable cause finding, that was incorrect. The relevant time for determining the applicable substantive rules, consistent with notions of due process, is the time of the underlying *conduct*. See *In re Ruffalo*, 390 U.S. 544 (88 SCt 1222, 20 LE2d 117) (1968) (procedural due process protections apply to lawyer discipline proceedings); *Baker v. State*, 280 Ga. 822, 823 (2) (633 SE2d 541) (2006) ("The Due Process Clause [of the Fourteenth Amendment] requires that a law give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden."). At any rate, this distinction does not make a difference here, because the applicable substantive rules did not change between the time of the underlying conduct in March 2018 and the filing of the notice of probable cause in October 2020.

the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would." (cleaned up)); *Olevik v. State*, 302 Ga. 228, 236 (2) (c) (i) (806 SE2d 505) (2017) ("In determining the original public meaning of a constitutional provision, we consider the plain and ordinary meaning of the text, viewing it in the context in which it appears and reading the text in its most natural and reasonable manner."); *City of Guyton v. Barrow*, 305 Ga. 799, 805 (828 SE2d 366) (2019) (citing above principles from *Deal* and *Olevik* and noting that they "apply to all positive legal rules" in applying them to agency regulations). By their plain text, Rule 1.8 (b) and Rule 1.9 (c) (2) apply only to clients and former clients, not prospective clients. Although the Special Master relied on former Comment 4A to Rule 1.6, a comment to a rule cannot change the text of that rule, which references only a lawyer's confidentiality obligations to "a client." See GRPC, Scope, Par. 21 ("The comments are intended as guides to interpretation, but the text of each Rule is authoritative."). And given that a comment to a rule cannot change that rule's text, it follows that a

5

comment to one rule certainly cannot change the text of a different rule even if the comment references other rules. Nothing in the text of Rules 1.8 (b) or 1.9 (c) (2) allows us to interpret the word "client" as used in those rules to include prospective or potential clients who never became actual clients.

Discipline cannot be predicated under Rule 1.6 when no violation of that rule was charged. And although Rule 1.9 (c) (2) references Rule 1.6, that reference becomes relevant only if the text of Rule 1.9 (c) (2) already applies to the conduct in question, i.e., if a lawyer's prior representation of a "client" is at issue. Therefore, at the time of Mignott's alleged misconduct, Rules 1.8 (b) and 1.9 (c) (2) applied only to clients and former clients, not former prospective clients.

Our review of the record and transcript in this matter indicates that the Bar took the position that the grievant merely consulted with Mignott during their consultation and never hired Mignott to represent her. Therefore, she was merely a prospective client, not an actual client. The consequence of the Bar's admission that the

grievant never engaged Mignott to represent her is that because Mignott never formed an attorney-client relationship with the grievant, Mignott was not subject to the prohibitions of Rules 1.8 (b) and 1.9 (c) (2).[2]

We conclude that the Review Board and the Special Master erred by recommending any discipline based on Mignott's charged misconduct, because the Bar did not prove by clear and convincing evidence that she violated Rules 1.8 (b) and 1.9 (c) (2). We therefore reject the recommendations for suspension made by the Special Master and the Review Board. No discipline is imposed, and this matter is dismissed.

*No discipline imposed and case dismissed. All the Justices concur.*

---

[2] A new Rule 1.18, approved by this Court effective May 14, 2021, specifically governs duties to prospective clients. The new provision does not apply in this case because it was adopted after the conduct at issue occurred.