**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: November 7, 2023

S22Y0940. IN THE MATTER OF TAMORRA A. BOYD.

PER CURIAM.

This disciplinary matter is back before the Court following a remand for a hearing on the issue of whether respondent, Tamorra A. Boyd (State Bar. No. 201382), who was admitted to the Georgia Bar in December 2014, was in default as to the Bar's previously filed formal complaint, which charged her with violations of Rules 1.4, 1.5 (b), 7.1, and 8.4 (a) (4) of the Georgia Rules of Professional Conduct ("GRPC") found in Bar Rule 4-102 (d). See *In the Matter of Boyd*, 315 Ga. 390 (882 SE2d 339) (2022) ("*Boyd I*") (vacating order granting the Bar's motion for default and report and recommendation imposing a six-month suspension and remanding for a hearing on default). On remand, special master LaVonda Rochelle De Witt held a hearing and once again found Boyd to be in default, after which

Boyd, through new counsel, timely requested a hearing for consideration of matters in aggravation and mitigation of discipline. Before that hearing could be set, however, Boyd filed a petition for voluntary discipline, and the State Bar responded, agreeing that a public reprimand is the appropriate discipline given new information that Boyd provided in that petition. The special master then issued a new final report and recommendation, agreeing that a public reprimand was the appropriate discipline and recommending that the Court accept Boyd's petition. We agree.

### *Procedural History Following Remand*

After this Court's remand in *Boyd I*, the special master scheduled a hearing on the issue of whether Boyd had defaulted on the formal complaint and/or had shown a proper case to open the default. A hearing was set for March 14, 2023, and, although neither Boyd nor her then-counsel were present at the hearing, the Bar presented its case on default and argued that opening the default would cause prejudice to the Bar's mission and purpose by making it appear that the Bar was trying to protect its members at the

2

expense of the public and by delaying justice. Following the hearing, the special master issued a thorough and well-reasoned order again granting the State Bar's motion for default and denying Boyd's motion to set aside the default, which the special master found had been willfully abandoned in any event. The special master gave the parties time to file a proposed report and recommendation or to request an evidentiary hearing on any remaining issues, including aggravation and mitigation. Through new counsel, Boyd requested an evidentiary hearing, but, before that hearing could be set, Boyd negotiated with the Bar to resolve the issue via a petition for voluntary discipline, which she filed in July 2023.

In the petition, Boyd acknowledged that the special master not only found her to be in default, twice, but also previously determined that a six-month suspension was the appropriate discipline based on her application of the American Bar Association's Standards for Imposing Lawyer Sanctions ("ABA Standards"). Nevertheless, Boyd requested that the special master reconsider that prior recommendation based on a reevaluation of her conduct in light of

new information which Boyd provided in the petition and consideration of the applicable aggravating and mitigating factors. Boyd contended that a public reprimand or a suspension shorter than six months would be more appropriate in this case. The Bar responded, offering its assent to Boyd's petition and declining to contest the accuracy or relevance of the additional averments and documents offered by Boyd in the petition, including that she did not act knowingly or intentionally to mislead or harm anyone; that she had mental health issues and other personal and emotional problems that may have clouded her judgment; that she has since obtained the proper diagnosis and treatment for those issues; that she has refocused her career in a way that is conducive to dealing with those issues; that she paid full restitution; that she expressed remorse; and that she provided evidence of her good character and reputation as a lawyer. Ultimately, the Bar agreed that Boyd violated GRPC Rules 1.4, 1.5 (b), and 7.1 and stated that, in light of the additional information provided by Boyd, it had elected not to

proceed with the prosecution of any Rule 8.4 (a) (4) violation at this time.

### *Facts Deemed Admitted by Boyd's Default*

In her new report and recommendation, the special master acknowledged both Boyd's concession that she is in default and the Bar's assent to Boyd's petition requesting a public reprimand. The special master noted that, due to Boyd's default, the following facts were deemed admitted pursuant to Bar Rule 4-212 (a): Olympia Law Group ("OLG") is a California law firm that purports to assist homeowners in distress with seeking solutions to their mortgage situations. According to its website, OLG offered its services nationwide "through its Of Counsel attorneys," and it marketed and advertised its mortgage services in Georgia. Boyd signed a contract with OLG, pursuant to which she was identified as "Of Counsel" for OLG matters in Georgia and was listed on the "Our Attorneys" webpage of OLG's website. In the contract, Boyd agreed "to represent [OLG] in [Georgia] with respect to [OLG's] Law Practice located within [Georgia]" and to provide services as an attorney to

OLG's clients, including contacting those clients and providing legal representation as to any OLG client, case, or matter assigned to her.

In 2018, a Georgia couple contacted OLG for help negotiating a mortgage loan modification to stop foreclosure of the wife's home. On April 11, 2018, the couple signed a contract permitting OLG to withdraw $750 per month from their bank account in return for OLG's help with their mortgage modification. By July 11, 2018, OLG had withdrawn a total of $3,000 from the couple's bank account. On July 26, 2018, the couple's mortgage servicing company, Select Portfolio Servicing, Inc. ("SPS"), contacted the wife directly, and learned of the couple's retention of OLG. SPS informed the wife that, although it had not had any contact with OLG or Boyd, SPS had approved her on July 20, 2018, for a loan modification based on the application the couple made prior to retaining OLG. The wife immediately checked the "client portal" on OLG's website, which showed that the representation had been "opened," but did not show the submission of any information to SPS on her behalf, and she e-mailed OLG, directing that it stop all loan modification proceedings

6

on her behalf, cease all withdrawals from her bank account, and return the fees it had already withdrawn.

Boyd contacted the wife for the first time on July 28, 2018, and advised her not to cancel the contract with OLG. The wife again requested a refund in light of the fact that neither Boyd nor OLG had performed any of the services promised. That same day, the wife checked the client portal again and noticed that it now showed that OLG had submitted the couple's documents to SPS on July 27, 2018, even though she had terminated OLG's services on July 26. The wife immediately wrote to OLG, again demanding reimbursement. In September 2018, after some back and forth between the wife and OLG about the refund, it became clear that no refund would be coming, and the wife filed a grievance against Boyd.

During the Bar's investigation of this matter, Boyd advised the Bar that the couple were clients of OLG; that she was "Of Counsel" for OLG for Georgia cases but did not directly work on the couple's case or consult with the couple as she was not required to by her "Of Counsel" agreement with OLG; that she only reviewed the couple's

7

submitted information and approved them as clients for OLG; that she was paid $75 for doing so; and that she never collected funds from the couple and had no authority to return funds to them. Boyd provided a copy of the retainer agreement signed by the couple and herself, as a representative of OLG, pursuant to which she agreed to oversee and supervise any OLG employees that may assist her with the representation. Nevertheless, Boyd saw her role as an "employee" of OLG in its representation of the couple and she suggested that it was OLG who bore the responsibility for setting fees and communicating with the couple. Eventually, however, Boyd provided to the State Bar a certified check in the amount of $3,000 made payable to the wife.

### *Additional Facts Offered by Boyd*

Noting that Boyd provided additional facts to provide context to her case and that the Bar did not contest the accuracy or relevance of those facts, the special master accepted the following as fact. During law school, Boyd sought mental health treatment and was misdiagnosed with a particular mental health condition by a

8

psychiatrist. She obtained treatment appropriate for that diagnosis and disclosed her condition, and the fact that she was receiving treatment for it, in her application for admission to the practice of law in Georgia. After graduating from law school, Boyd started a solo practice but had difficulties managing her practice.

In 2016, Boyd sought additional mental health care and began seeing a Georgia Licensed Professional Counselor. In 2019, a year after Boyd's conduct that is the subject of this disciplinary matter, Boyd's counselor determined that Boyd had been misdiagnosed and helped to properly diagnose Boyd with a different mental health disorder. Immediately after receiving the new diagnosis, Boyd went to her primary care physician and received prescriptions to help manage her newly-diagnosed condition. Since then, Boyd has filled the prescriptions regularly and has implemented a regime of strategies to permit her to meet her deadlines and other work responsibilities in light of her condition. For example, she ceased operating a solo practice and reoriented her practice so that she is working in an environment in which she is more likely to thrive.

Regarding the events underlying the grievance leading to this disciplinary matter, Boyd explained that while she was working as a solo practitioner, she was approached by a representative of OLG. The representative told her OLG was working to reduce mortgages for individuals who were unable to make their existing payments, that OLG had recently expanded to cover numerous states, and that OLG was fully bar-compliant in each state. Because she needed the money, Boyd accepted a position with OLG. Boyd asserts that she had no knowledge that OLG may have been developing relationships with attorneys outside of California for any purpose other than the legal expansion of its business and that she believed, at the time, that she was an employee of OLG. Her belief was based on OLG's representations to her, her low level of access to client files, and OLG's assertion that this process was fully bar-compliant. Under their arrangement, OLG paid Boyd $75 per file to perform title and bankruptcy searches for each client referred to her, but without Boyd's knowledge or permission, OLG, through non-attorney

10

employees, apparently used Boyd's name on various documents and represented to its clients that she was doing loan modification work.

### *Rules Violated*

The special master accepted the conclusions of the Bar and Boyd that she violated Rule 1.4 (lawyer shall reasonably consult with the client about the client's objectives and the means by which they are to be accomplished; shall keep the client reasonably informed about the status of the matter; and shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation) by her interactions (or lack thereof) with the couple; that she violated Rule 1.5 (b) (lawyer shall communicate to the client the scope of the representation and the basis or rate of the fee and expenses) by failing to explain to the couple anything about the rate or basis of her fee or about the limitations of the scope of her representation; and that she violated Rule 7.1 ("lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services," in relevant part, in advertising or marketing materials) in

11

that Boyd bore the ultimate responsibility to ensure that OLG's communications concerning its services in Georgia complied with the GRPC and that, instead, she permitted OLG to "rent" her law license to market its mortgage modification services in Georgia through false and misleading statements, including that it was authorized to practice law in Georgia and that Boyd would act as local counsel for OLG's "clients" in Georgia and actually work on those clients' matters. The special master also acknowledged and accepted the agreement between the Bar and Boyd pursuant to which the Bar agreed to refrain from pursuing its allegation that Boyd violated Rule 8.4 (a) (4). The special master recited that the maximum penalty for a single violation of Rule 1.4 and 1.5 is a public reprimand, while the maximum penalty for a violation of Rule 7.1 is disbarment.

### *Application of ABA Standards*

The special master recognized that this Court relies on the ABA Standards for guidance in determining punishments in disciplinary cases, and that those Standards require consideration

of: (a) the duty violated; (b) the lawyer's mental state; (c) the potential or actual injury caused by the misconduct; and (d) the existence of aggravating or mitigating factors. The special master stated, in relevant part, that a reprimand is generally appropriate when a lawyer negligently engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system and that a suspension is generally appropriate when a lawyer knowingly engages in such conduct. The special master found reason to reconsider Boyd's mental state at the time of the violations based on her mental health and circumstances that affected or could have affected her judgment. The special master, therefore, accepted Boyd's characterization of her conduct as primarily negligent rather than knowing or intentional, agreeing that while Boyd should have paid more attention to the red flags that were present in her agreement with OLG, she did not have actual knowledge of OLG's alleged misconduct as it was occurring. Thus, the special master accepted Boyd's assertions that, even though she maybe should have known

she was participating in a deceptive scheme that could lead to significant losses to Boyd's and OLG's clients, she never set out to deceive anyone. With regard to the client's "injury or potential injury," the special master agreed that Boyd paid full restitution to the couple even though she was not the party who received their payments. Ultimately, the special master agreed with Boyd and the Bar that the presumptive level of discipline after applying the ABA Standards would be a public reprimand.

The special master found that the penalty could be aggravated by the fact that Boyd has one prior disciplinary matter and by her initial refusal to acknowledge the wrongful nature of her conduct. See ABA Standards 9.22 (a) and (g). In deciding not to apply the "dishonest or selfish motive" factor, the special master noted that Boyd had acknowledged the special master's prior finding that she should not have accepted OLG's "too-good-to-be-legitimate" arrangement, but concluded, in light of Boyd's recent disclosure of her mental health issues at the time of the violation, that Boyd's judgment was likely clouded by her personal and emotional

14

problems and mental disability to the point that her motives were not as dishonest or selfish as the special master had previously found. The special master further found that Boyd's discipline should be mitigated by the fact that she was inexperienced in the practice of law, having only practiced for two years before signing the OLG "Of Counsel" Agreement and fewer than four years when the underlying grievance was filed. See ABA Standard 9.32 (f). The special master further agreed to accept as additional mitigating factors that Boyd made a good faith effort to make restitution by repaying the couple all of the money OLG received despite having only received $75 of that money, see ABA Standard 9.32 (d); that Boyd was suffering from personal or emotional problems and/or a mental disability, which the special master noted seemed to satisfy the requirements of ABA Standards 9.32 (c) and (i) (1) – (4); that Boyd expressed remorse, albeit delayed, in a written letter submitted to the Bar, see ABA Standard 9.32 (l); and that Boyd had submitted evidence of her good character and reputation as a lawyer in that she has been recognized as providing pro bono services to

eligible clients and engaging in other volunteer activities and has demonstrated growth in the practice of law. See ABA Standard 9.32 (g).

Ultimately, the special master concluded that Boyd had participated in a deceptive marketing scheme which threatened the public, undermined public trust in the legal profession, and actually harmed the couple; that her participation was a product of her negligence and bad judgment as described above; and that the mitigating factors in this case offset the aggravating factors in a way that justified a reconsideration of her prior recommendation (i.e., a six-month suspension). The special master gave credence to Boyd's argument that her case is very similar to *In the Matter of Paxton*, 311 Ga. 363 (857 SE2d 695) (2021) (granting petition for voluntary discipline and imposing Review Board reprimand for Paxton's violations of Rules 1.2, 1.3, and 1.5 (b) in failing to work diligently for a client obtained through her relationship with a nationwide loan modification company), and that close examination of the aggravating and mitigating factors in this case suggests a similar, if

16

slightly more severe, penalty than what was imposed in *Paxton* would be appropriate. Therefore, the special master recommended that this Court accept Boyd's petition for voluntary discipline and impose a public reprimand.

Having reviewed the record in this case, we agree that the special master's decision to reevaluate the aggravating and mitigating factors in this case was appropriate given the new information provided by Boyd. Further, we agree that Boyd appears to have acted out of negligence and naivete in her dealings with OLG and the couple and that the aggravating factor of dishonest and selfish motive does not apply to Boyd's conduct. In terms of the proper level of discipline, the parties are correct that the facts of *Paxton* are somewhat similar to this case, although it involved the violation of different Rules and Paxton had no prior disciplinary history. Nevertheless, we previously have imposed a public reprimand for violations of Rules 1.4 and 1.5. See *In the Matter of Scott*, 313 Ga. 618 (872 SE2d 279) (2022) (accepting petition for voluntary discipline and imposing Review Board reprimand for

violations of Rules 1.4 and 1.5 in separate client matters where attorney had no prior disciplinary history); *In the Matter of Gantt*, 305 Ga. 722 (827 SE2d 683) (2019) (accepting petition for voluntary discipline and imposing Review Board reprimand for violations of Rules 1.2, 1.3, 1.4, and 1.5 in separate client matters where attorney was cooperative throughout the disciplinary proceedings but had one prior disciplinary matter). And, while we recently have imposed a suspension for a Rule 7.1 violation, that case involved active involvement by the attorney in the Rule 7.1 violation and also included a Rule 8.4 violation. See *In the Matter of Palazzola*, 310 Ga. 634 (853 SE2d 99) (2020) (accepting lawyer's petition for voluntary discipline and imposing nunc pro tunc a suspension of indeterminate length but not less than three nor more than six months for violations of Rules 1.16 (d), 5.3, 7.1, and 8.4 (a) (4) in his law firm's advertisements and in his dealings with three clients). Ultimately, notwithstanding her initial disengagement from the disciplinary proceedings, we agree that a public reprimand is an appropriate punishment under the circumstances of this case.

Therefore, the Court hereby accepts Boyd's petition for voluntary discipline and directs that Tamorra A. Boyd be administered a public reprimand in open court pursuant to Bar Rules 4-102 (b) (3) and 4-220 (c) for her admitted violations of GRPC 1.4, 1.5 (b), and 7.1.

*Petition for voluntary discipline accepted. Public Reprimand. All the Justices concur.*